## Case No. 14,858.

### UNITED STATES v. COOLIDGE.

[2 Gall. 364.] 1

Circuit Court, D. Massachusetts. May Term, 1815.

WITNESS—REFUSAL TO BE SWORN—TRIAL—DISCHARGING JURY—INDICTMENT—WITNESS NOT SWORN—AFFIDAVIT.

1. One, who was not a Quaker, being called as a witness, and refusing to be sworn, on the ground of conscientious scruples arising from a declaration formerly made, was committed for a contempt, the liberty to affirm being strictly confined to Quakers by the laws and practice of Massachusetts.

[Cited in Donahoe v. Richards. 38 Me. 412; Com. v. Willard, 22 Pick. 477.]

2. The court has power to discharge the jury empanelled to try the issue in a criminal cause, whenever it is necessary for the purposes of justice—and there is no exception of capital cases.

[Cited in Com. v. Fells, 9 Leigh (Va.) 616; Dobbins v. State. 14 Ohio St. 500; Mahala v. State, 10 Yerg. 536; People v. Brickner (O. & T.) 15 N. Y. Supp. 529, 530; State v. Davis, 31 W. Va. 393, 7 S. E. 26; State v. McCoy, 14 N. H. 365; State v. Shuchardt, 18 Neb. 457, 25 N. W. 723; State v. Walker. 26 Ind. 353.]

3. The grand jury having received testimony of a person not under oath, the indictment was quashed, as irregularly found.

[Cited in U. S. v. Farrington. 5 Fed. 346; U. S. v. Haynes, 29 Fed. 697.]

[Cited in Low's Case. 4 Greenl. 440; Mackin v. People, 115 Ill. 315, 3 N. E. 225; People v. Lauder, 82 Mich. 151, 46 N. W. 969; State v. Dayton, 23 N. J. Law, 57. Cited

1 [Reported by John Gallison, Esq.]

in brief in State v. Ward, 64 Me. 548. Cited in Washburn v. People, 10 Mich. 394.]

4. In every case of a motion to the court for a cassetur, the facts, on which it is grounded. must be proved by affidavit.

This was an indictment, found at the May term, 1813, for shipping on board of a vessel, called the Moranda, fifty barrels of rye flour, with intent to transport the same to Halifax, during the war, contrary to the second section of the act of 6th of July, 1812, c. 129 [2 Stat. 779]. In the course of the trial, William R. Lee, Jr. who was called as a witness on the part of the government, declined taking the oath usually administered to witnesses, but offered to affirm. When questioned by the court, he stated, that though he was not one of the religious sect usually called Quakers, yet he had conscientious scruples as to the taking of an oath, in consequence of a solemn declaration, which, on some former occasion, he had voluntarily made, not thereafter to take an oath. He was informed by the court, that the permission to affirm was strictly confined to those of the Society of Friends; that the law was peremptory, and that, however unwilling the court might be to adopt so harsh a measure, if he persisted in refusing to be sworn, and the attorney of the United States should not consent to waive his rights, it would become necessary to commit him for a contempt.

The district attorney, after attempting to proceed without Lee's testimony, and finding that, without it. certain papers, material to the prosecution, could not be identified, moved for a commitment.

THE COURT then ordered a process of commitment, which was issued accordingly. 2

F. Blake, for Coolidge, moved the court to advise the district attorney to a nolle prosequi, on the ground that the trial could not proceed—but THE COURT replied, that it was not their practice in any case to advise or control the district attorney in this respect.

The district attorney then moved the court to discharge the jury, and that the cause should remain for trial at a future day.

F. Blake, opposed this motion. He admitted, that there were extreme cases, in which the court had power to withdraw a juror, and continue the cause; but he contended, that in no case had this ever been done on the motion of the government, when on a criminal trial it was deprived of evidence from some unforeseen accident. Had the tables been turned, and had one of the witnesses on behalf of the accused secretly withdrawn himself, no delay or indulgence could have been granted on this account.

Before STORY, Circuit Justice, and DAVIS, District Judge.

2 He was again brought into court in the afternoon, and still refusing to testify, was recommitted. but shortly after addressing a letter to the court, in which he declared his readiness to obey the order of the court, he was discharged from custody.

STORY, Circuit Justice.—The question is simply this: A party is on trial before a jury, and a circumstance occurs, which will occasion a total failure of justice if the trial proceed; have the court, in such an emergency, power to withdraw a juror? It has been stated from the bar that, in capital cases, the court have not this power; but in a case in Foster's Crown Law, and in several other cases, it has been held, that they have. In misdemeanors, there is certainly a larger discretion, and until the cases just mentioned, capital trials were generally supposed to be excepted. It is now held, that the discretion exists in all cases, but is to be exercised only in very extraordinary and striking circumstances. Were it otherwise, the most unreasonable consequences would follow. Suppose, that in the course of the trial the accused should be reduced to such a situation, as to be totally incapable of vindicating himself;—shall the trial proceed, and he be condemned? Suppose a juryman taken suddenly ill, and incapable of attending to the cause; shall the prisoner be acquitted? Suppose that this were a capital case, and that, in the course of the investigation, it had clearly appeared, that on Lee's testimony depended a conviction or an acquittal; would it be reasonable that the cause should proceed? Lee may, perhaps, during the term, be willing to testify. Under these circumstances, I am of opinion, that the government is not bound to proceed, but that the case be suspended until the close of the term, that we may see, whether the witness will not consent to an examination.

On a subsequent day of the term, F. Blake moved that the indictment be quashed, because the grand jury, who found the bill, received the testimony of Lee, who was a material witness for the government, without oath, he not being a Quaker; and to prove the fact, on which this motion was grounded, he offered Lee as a witness.

BY THE COURT.—This motion must be supported by affidavit. We cannot receive evidence of matter of fact, in support of a motion to quash, otherwise than in writing, as there would not then appear on record any ground for the exercise of the discretion of the court. Coolidge must also himself make affidavit, that he believes the fact to be as stated.

The affidavits were produced accordingly. The district attorney read the affidavits of the marshal and his deputy, stating, that they recollected Lee to have been present among the witnesses for the government, at the term at which the indictment was found, and were strongly impressed, that he was sworn; but they could not say positively, that he held up his hand.[3]

BY THE COURT.—Lee's affidavit is direct and positive, as to a fact, of which he could not be ignorant. The counter affidavits are merely of impressions. The court must be governed by the rules of evidence, and the facts must therefore be taken to be as stated by Lee. Of the law arising upon these facts there can be no doubt. The grand jury is the great inquest between the government and the citizen. It is of the highest importance, that this institution be preserved in its purity, and that no citizen be tried, until he has been regularly accused by the proper tribunal. Every indictment is subject to the control of the court, and this indictment, having been found irregularly, and upon the mere statement of a witness without oath, which was not evidence, a cassetur must be entered.[4]

NOTE　It was ordered by the court, that in future a record should be kept of every witness sworn to go before the grand jury, and that the foreman should also return a list of the witnesses examined.

---

[3] This is the usual ceremony of taking an oath in Massachusetts.

[4] See Rex v. Bridgewater & T. Canal Co., 7 Barn. & C. 514.

