OPINION OF THE COURT — by the
How. POWHATTAN ELLIS.
From the record in this case it appears, that at the last term of the *135 circuit court of Adams county, the following order was spread upon the minutes — “At twelve o’clock on Saturday night, the last day of the term, the jury in this prosecution not having agreed upon their verdict, were discharged by the Court, without the consent and against the wish of the prisoner, and the prisoner is forthwith ordered to be remanded to the prison of Adams county.” — The first authority upon the question, now submitted for the consideration of the court, is to be found in Coke on Lit! tleton sec. 366, letter (F,) where the principle is laid down in broad terms, “ A jury sworn and charged in case of life or member, cannot be discharged by the court or any other, but they ought to give a verdict.” The same doctrine is to be found in 3 Institutes 110,' where Lord Coke -says, — “ To speak it here once for all, if any person be indicted of treason or of felony, or of larceny, and plead not guilty and thereupon a jury is returned, and sworn, their verdict must be heard, and they cannot be discharged ; neither can the jurors in those cases give a privy verdict: but, ought to give their verdict openly in court.” It seems to have been admitted at bar in the argument, that the only case referred toby Lord Coke to support the rule he laid down, had no applicability, for it was the case of an approver to be found in the year books during the reign of Edward III. in which it was adjuged, “ that a person indicted for larceny, and who had pleaded not guilty, and put himself upon his country, should not af-terwards, when the jury was'in court, be admitted to become an approver, because by solemnly denying the fact by his plea, he had lost all credit, and ought not to be received as a witness against others.” Sergeant Hawkins and Mr. Justice Blackstone adopted the rule in the Institutes, and refer to those books as authority. I find from an examination of the case of the two Kinlock’s Foster, 27 — the judges did not consider the • resolution as reported in Carthew entitled to much respect, as there was no ■ authentic report of the case. So far as we have been able to understand this case as reported by Chief Justice Erye, Holt is reported to have said, —“ I have had occasion to consider of this matter. In criminal cases a juror cannot be withdrawn but by consent. And in capital cases it cannot be done even with consent.” It is evident the learned judge did not intend to lay down a general rule upon this subject: but, to prevent the ex ercise of an unreasonable and oppressive claim on the part of the prose *136 cutor, who, it seems, after the jury had been charged with the deliverance of the accused, found his evidence insufficient to produce a conviction, prayed to have a juror withdrawn, and the cause to be continued, until such time as he might be prepared with his testimony. An application so unprecedented, even in those days, could not fail to strike the court as unwarranted by precedent and principle,- and contrary to the known and established rights of every subject of the realm. Subsequent to the 'resolution reported in Carthew, many cases can be found where the courts have discharged juries where the crown was not prepared with its testimony. This was done in the cases of Whitebread and Fearn-wick reported in the state trials — and deemed by all humane and enlightened judges of the present day, an arbitrary and unjustifiable exercise of discretionary power. Mr. Justice Foster, in his able and elaborate re" view of all the authorities in the case of the Kinlock’s, does not deny the general position, that a jury can be discharged under particular circumstances, when he says, — “ It seems that an opinion did once prevail, that a jury once sworn and charged in any criminal case whatsoever, could not be discharged without giving a verdict; butlie says, this opinion is exploded in Ferrara case, and it is there called a commonjtradition, which had been held by many learned in the law.
An information was exhibited against Ferrar’s for forgery, — and it was resolved by all the Justices, that although the jury be charged and sworn in the case of a plea of the crown, yet a juror may' be drawn, or the jury dismissed, contrary to common tradition, which hath been held by many learned in the law. Sir Thos. Ray, 84. From this view of the old authorities, without resorting to the numerous cases in Kelyng’s, it will be admitted the court has the power of discharging juries. in capital cases under circumstances of great necessity. What circumstances of necessity will be considered as sufficient to warrant our interposition in the exercise of high discretionary powers in such cases, is a matter of great doubt and delicacy. I am fully pursuaded it will be difficult and dangerous to establish any general rale upon this subject, therefore, we shall confine ourselves to the record before us, and not hazard the establishment of a precedent which may in its operation, turn loose the murderer upon society, or sacrifice the innocent to the inflexibility of its principles *137 It was urged with considerable force and ability, that the defendant is entitled to his discharge, because the jury separated contrary to his consent before they agreed on their verdict; and, secondly, the fact of their not being able to agree, raises such a presumption in favor of his innocence, as ought to be tantamount to an acquittal. These positions cannot be sustained, without incurring all the evils resulting from a general rule, hence we have thought it prudent to confine ourselves to the particular circumstances of the case. So far as the American authorities touch this case, I think there can be no doubt as to the result of our conclusions. In the case of the Commonwealth vs. Bowden, 9 Massachusetts Reports, the court was clearly of opinion, that a juror could be withdrawn in a case of felony without operating as an acquittal: but I believe the exercise of discretionary power in that case, uncontrolled by any circumstance of absolute or inevitable necessity, extended the doctrine too far. The court declares “ the ancient strictness of the common law upon this subject, has very much abated in the English courts; nor would it be consistent with the genius of our government or laws, to use compulsory means to effect an agreement among jurors. The practice of withdrawing a juror, where there existed no prospect of a verdict, has frequently been adopted at criminal trials in this court, and the exception taken in this case cannot prevail.” The same doctrine was held in the case of the Commonwealth vs. Wood & Sherburn, on an indictment for lareency. The case of the People vs. Olcate, ruled by Mr. Justice Kent, in 2 Johnson’s cases, is very full upon the subject, which extends not only to misdemeanors, but capital cases. He says “ with respect to misdemeanors, we may with .perfect safety and propriety adopt the language of Sir M. Foster, 27, which, he however applies to capital crimes, that it is impossible to fix upon any single rule, which can be made to govern the infinite variety of cases, that may come under the general question, touching the power of the court to discharge juries sworn and charged in criminal cases, which evidently implies, if the court is satisfied, the jury have made long .and unsuccessful efforts to render a verdict, and in all human probability there be but little prospect of their agreeing; every principle of humanity and public justice would seem to require, they should he delivered of their charge, and the prisoner remanded. I *138 I believe there is not a single case io be found in the books, whore the court is precluded from the exercise of a discretionary power in discharging the jury, if the prisoner should put himself upon the country in a fit of insanity — so in the case of the jury becoming intoxicated — so if one of the jurors fall down in'a fit of appoplexy — so if one of the jurors he mentally diseased, or incurably prejudiced against the accused — so if the jury be separated and dispersed by an armed force, — and, so, also if the judge he incapacitated from presiding over the trial. In all these cases, I presume it will not he pretended, the prisoner would go without day. If such a doctrine he established and declared to be the law of the land, the ends of justice would be defeated, and the most abandoned and depraved villains would be virtually licenced'in the commission of the most unparallelled atrocities. Every principle of public policy and expediency protests against such a state of things, and I think the corrective, 'must, from the very nature of things, rest in the breast of the court, in the exercise of a sound discretion, controlled by the cases cited, for the protection of the prisoner, from unreasonable and oppressive prosecutions. The defendant’s counsel relied much upon the 5th Article of the amendment to the constitution of the United States, which contains the following provision: “ nor shall any person be subject for the same offence, to be twice put in jeopardy of life or limb.” I must confess, this amendment to the constitution of the United States, created the only doubt I have ever entertained upon this important question. It was properly admitted in argument, that this provision of the constitution was binding in the United States, as well as the state courts of the Union, for I take it, it has never been questioned, but that the constitution of the United States is the paramount law of the land, any law usage or custom of the several states to the contrary notwithstanding. What was intended by the framers of the constitution, when they declared, “nor shall any person be twice put in jeopardy of life or limb for the same offence.” Chief Justice Spencer, in the case of the People vs. Goodwin, 18 Johnson, gives a very learned and able opinion upon this subject, and shews what must have been the intention of those who framed this Article ? But, it is asked, why insert a provision in the constitution, for the protection of the citizen, which had been repeatedly and unequivocally recognised by the whole *139 current of English authorities? This question will be satisfactorily answered, by a recurrence to the history of the times, not very long after the establishment of our independence, when every stale, and every individual in the community were jealous of their rights and liberties— privileges which they had rescued at the hazard of their lives and fortunes from the throes of the revolution, and secured by a solemn recognition in the charter of their political freedom. They did not wish to leave any thing in doubt, when they looked back with horror and indignation to the judicial despotism of a Jeffries. The prisoner, it is said, was in jeopardy from the very moment the jury was empannalled to try him, but, I cannot pursuade myself that such is the fair construction to be given to the-amendment. The forms prescribed the by law, to ascertain the guilt or innocence of the accused, cannot properly be considered, that kind of jeopardy contemplated by the constitutien of the U. States; but, the means used by courts of law, in attaching the jeopardy, which can never take place, until after the rendition of the verdict by the jury, charged with the deliverance of the accused. Such I conceive to be the construction, which ought to be placed upon this word. A prisoner must in all cases answer to his offence, before he can be considered in jeopardy.
And will it be contended, if any one of the facts necessary to constitute the whole of an answer be wanting, that the others will be sufficient in contemplation of law ? But, we are met by this objection — suppose the court place it out of the power of the prisoner to answer by discharging the jury, — then I will answer and say, if the discharge has-taken place unadvisedly, the cases controlling the undue exercise of such a power, will protect him, and the court will in all such cases be compelled to consider his answer as full and perfect, upon a plea of autrefois acquit. How stands the case here? The defendant Moor, was arraigned, and he pleaded not guilty, and put himself upon the country for trial, and a jury was regularly charged with his deliverance. ■ After hearing the evidence and counsel on both sides, the jury retired to consider of their verdict, and not being able to agree, they were discharged at the very last momentiof the term, when the powers of the court and jurors ceased. Was this the exercise of a discretionary power, used for the purpose of oppressing the prisoner? Certainly not: It was a case of inevitable necessity, *140 which grew out of the operation of the law, known to the prisoner, and over which the court could have no control. I cannot distinguish this case, of inability, in the jury to act, from those I have already mentioned, where the jury, either from intoxication, or if they be bodily or mentally diseased, are incapacitated from the discharge of their duties. The case of Cook & et. al, cited from Pennsylvania, does not deny the power of the Court, under imperious cases of necessity, to discharge the jury. Chief Justice Tilghman, in giving his opinion, said it was the duty of the Justices who tried the case, to receive separate verdicts, although the jury could not agree .as to the other. There was no fact on the record to shew, which of the parties were entitled to the verdict, the jury were ready to give in, therefore, the learned judge correctly observed, he would not jeopardize the lives of innocent men, who had a right to claim their verdict, on the trial below, more especially as it did not appear to the court there was an absolute necessity of discharging the jury at the time they separated, He observes, when speaking of Goodwin’s case, “ this argument, it must be confessed reached to all cases of felony, but still he prudently confined his opinion to the case before the court, in which there was an ingredient of some weight, not found in any other case, and that was, that the time of the court setting was to expire in half and hour, and there was a moral certainty the jury would not agree in so short a time.” The case decided by Mr. Justice Story, 2 Gallison 364, lays down the po-' sition, the courts have the power, of discharging juries under striking-circumstances of necessity.
We are of opinion the judge acted in conformity with the well established principles of law, in discharging the jury, and remanding the prisoner to take his trial at the next term..