The Chief Justice delivered the opinion of the court.
The defendant was brought to trial at the Court of General Quarter Sessions of the Peace of the county of Somerset, in June, 1827, on an indictment for assault and battery. After hearing the evidence, the jury withdrew to consider of their verdict, at about the hour of eight in the evening. *320 Hot agreeing, they carne into court two or three times, and once requested to tóe discharged; but were sent back to their room; and at about half after eleven they came into court, and being called, eleven only appeared, one of them having left the room and his fellow jurors without the permission of the officer attending them, and gone home > whereupon the court, without the consent of the defendant, discharged the jury. At the Court of Oyer and Terminer, *257] in October last, the prosecuting *attorney called the defendant, and moved for another trial. The defendant moved to be discharged; and that court have asked our advice and direction.
The doctrine on which the decision of this case depends, has undergone, within a few years, the most full and thorough investigation. In the case of The People v. Denton, 1 John, cases 275, the defendant was indicted for a misdemeanor in neglecting his duty as inspector of an election, and on trial, the jury, having heard the evidence, retired, and after being out all night, came into court with a verdict of not guilty, but on being polled, three of them dissented, and after being sent out several times they informed the court there was no prospect of their agreeing on a verdict. The Court of Sessions, without the consent of the defendant, discharged the jury, and the indictment being removed into the Supreme Court, it was there held that the power to discharge the jury existed, although to be exercised with great caution, and only after every reasonable endeavor to obtain a verdict had been found unavailing; that the discharge in the case in question was necessary and proper; and that the defendant should be again tried by another jury on the same indictment. In the case of The People v. Olcott, 1 John, cases 301, the indictment was for-a conspiracy to defraud the -Bank of Hew York and was tried in the Court of Oyer and Terminer of the county of Hew York. The jury remained out a long time, and being unable to agree, a juror was withdrawn, by the order of the court-, without the *321 consent of the prisoner, and the jury discharged. The defendant having been brought by habeas corpus before the Supreme Court, and a motion made for his discharge, it was determined that the Court of Oyer and Terminer had power, in their discretion, to discharge the jury without the consent of the prisoner, and that he might be brought to trial a second time upon the, indictment. In delivering the opinion of the court, Justice Kent said, “If the court are satisfied that the jury have made long and unavailing efforts to agree, that they are so far exhausted as to be incapable of further discussion and deliberation, this becomes a case of necessity and requires an interference.” In the case of Goodwin, indicted for manslaughter, and tried in the Court of General Quarter Sessions of the Peace oí the city and county of New York, the jury were out seventeen hours and unable to agree on a verdict, and the legal duration of the Sessions being about to expire, and the *jury [*258 declaring there was not the least probability of their agreement, they were, without the consent of the defendant, discharged. The question whether he could bo again put on his trial on the indictment was argued before the Supreme Court, and the opinion of that court was delivered by Chief Justice Spencer. He said, upon full consideration, I am of opinion that although the power of discharging a jury is a delicate and highly important trust, yet that it does exist in cases of extreme and absolute necessity, and that it may be exercised without operating as an acquittal of the defendant, that it extends as well to felonies as misdemeanors, and that it exists and may be discreetly exercised in cases where the jury, from the length of time they have been considering a cause, and their inability to agree, may be fairly presumed as never likely to agree, unless compelled so to do from the pressing calls of famine or bodily exhaustion. Much stress has'been placed on the fact that the defendant was in jeopardy during the time the jury were deliberating; it is true that his situation was critical, and there was, as *322 regards him, danger that the jury might agree on a verdict of guilty, but in a legal sense; he was not in jeopardy so that it would exonerate him from another trial. He has not been tried for the offence imputed to him; to render the trial complete and perfect, there should have been a verdict either for or against him. In a legal sense therefore, a defendant is not once put in jeopardy until the verdict of the jury is rendered for or against him, and if for or against him he can never be drawn in question again for the same offence.” A second trial was ordered and took place. 18 Johnson 187. To avoid misunderstanding, it is proper here to remark, that the generality of expression of the learned judge should be taken with due qualification, for in the case of Casborus, 13 John. 351, the same court held that the arrest of judgment, on a conviction upon an indictment for a felony, was not a bar to a'second indictment and conviction for the same offence, although the second indictment was in all respects similar to the first-In the case of The United States v. Coolidge, 2 Gallison 364, on an indictmentj6for a misdemeanor, a witness called on the part of the government, having refused to be sworn,, was committed for contempt. Justice Story decided that, the court had power to discharge the jury without the consent of the defendant, and to try him again at another day. In Bowden’s case, 9 Mass. 494, on the trial of an indictment. *259] *for robbery, the jury, after being together a night and part of a day, and being unable to agree, were discharged by order of the court, without consent of the prisoner, and afterwards in the same term another jury wasimpanneled for his trial who found him guilty. On exception taken, on motion in arrest of judgment, the Supreme-Court of Massachusetts said, the practice of withdrawing a juror where there existed no prospect of a verdict had frequently been adopted at|criminal trials in that court, and decided that the exception taken ought not to prevail. In The Commonwealth v. Purchase, 2 Pick. 521, a motion was- *323 made in arrest of judgment. The defendant was tried on an indictment for murder, and after a deliberation of eighteen hours, it appearing to the court that there existed a difference of opinion among tho jury upon the evidence, which any further deliberation would have no tendency to remove, they were discharged. He was afterwards tried on the same indictment, and convicted of manslaughter. The court overruled the motion in arrest. Parker, Chief Justice, who delivered their opinion, said it was an incontrovertible principle “ that a jury charged with a cause on an indictment for felony, may be discharged of it, without a verdict, in cases of necessity. By necessity cannot be intended that which is physical only. It is a moral necessity arising from tho impossibility of proceeding with the cause, without producing evils which ought not to be sustained. Where they have applied their minds to the case as long as attention can be useful, and have come to a settled opinion, resulting in a disagreement, the cause must he taken from them, and public justice demands that another trial should he had.” In the case of The United States v. Perez, 9 Wheat. 579, the prisoner had been put upon trial in the Circuit Court of the Southern district of Hew York, for a capital offence, and tho jury being unable to agree, were discharged by the court from giving a verdict, without the consent of the prisoner, or the attorney for the United States. The prisoner thereupon claimed his discharge as of right, and the opinions of tho judges being divided, the matter was certified to the Supreme Court of the United States. That court said, “We are of opinion the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, *in their [*260 opinion, taking all tho circumstances into consideration, there is a manifest necessity for the act, or the ends of jus *324 tice would otherwise be defeated. They are to exercise a sound discretion on the subject, a'nd it is impossible to define all the circumstances which would render it proper to interfere. To be sure the power ought to be exercised with the greatest caution, under urgent circumstances, and for very plain and obvious causes, and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But after all, they have the right to order the discharge.” “We are aware that there is some diversity of opinion and practice on this subject in the American courts, but after weighing the question with due deliberation, we are of opinion that such a discharge constitutes no bar to further proceedings, and gives no right of exemption from being again put upon trial.” The case of The King v. Edwards was argued in 1812, before the twelve judges of England. The prisoner was indicted for maliciously shooting at a man with intent to kill him. On the trial one of the jurors was taken with a fit, and found incapable of proceeding with his duty, whereupon "the court directed a new jury to be sworn, and the prisoner was convicted. His counsel argued that “a judge having charged a jury in a criminal case, could 'not discharge that jury and try the prisoner again, on the same indictment, before another jury.” But the judges stopped the counsel who was to have argued for the crown, and said it had been decided in so many cases, that it was now the settled law of the country, and ordered judgment against the prisoner.
In some of these cases, and especially those of Olcott, Goodwin and Purchase, the subject was examined at length, and all the authorities, ancient and modern, were reviewed by those enlightened judges, Kent, Spencer and Parker. A repetition of them on this occasion would be, at the least, superfluous.
In the case of The Commonwealth v. Cook and others, on indictment for murder, reported in 6 Berg, and Rawle *325 577, a most elaborate investigation was made by Chief Justice Tilghman and Justice Duncan, of the Supreme Court of Pennsylvania. They agree on the general rule, and iu almost the same terms, as stated by Chief Justice Spencer in Goodwin’s case. Tho former saying there is indeed one principle which cannot be contradicted, and that is, that the jury may be discharged in cases of absolute *necessity.” The latter saying, “ there are cases of [*261 positive, absolute and extreme necessity, which produce the impossibility of proceeding with justice to the prisoner or to the state.” “ There is at this day a settled and uncontroverted rule, that, in case of life or member, a jury sworn and charged cannot be discharged before they give a verdict, unless with the consent of the prisoner and where it is for his benefit, or in casos of extreme necessity.” But both those judges determined that the absence of the jury for fifteen hours, their repeated returns to court with declarations of inability to agree and requests to be discharged, and their ultimate declaration that there was not the least probability they over should agree and they might as well attempt to see out of the same eyes, did not, in a capital case, furnish ground sufficient to justify their discharge.
If it he supposed the rule sanctioned by these cases is in some degree a departure from tbo ancient principles of the common law, by something like judicial legislation, a careful perusal of the discussions to which I have referred will satisfactorily show that those principles are in accordance with the liberal and just spirit of our day, which will neither require a juror to decide between his conscience and starvation, nor justify him in yielding tho sincere dictates of his reason and judgment to the necessity of uniting in a verdict contrary to his convictions of right and duty, or remaining enclosed in the jury room until released by a power which neither jurors nor judges may withstand. And whatever may he said in books, for in practice I am slow to believe it ever occurred, of carting a jury, it certainly belongs toa *326 time when courts were much less tender of the rights of jurors; and the judge who in our day should be found moving from county .town to county town, with a conscientious and resolute jury in his train, would be exposed to ridicule, if not to contempt, and might feel himself incumbered with a most inconvenient appendage, before he would find authority to open a court or receive a verdict in a remote county. Nor indeed does so unreasonable a rule seem to have prevailed in former times ; for in that highly respected treatise, called Doctor and Student, first published in 1518, in answer to a question of the doctor, whether it stand with conscience to prohibit a jury of meat and drink till they be agreed, the student says, “ I take not the law of the realm to be that the jury after they be sworn may not eat nor drink till they be agreed of the verdict, *262] but truth it is * there is a maxim and old custom in the law, that they shall not eat nor drink after they be sworn till they have given their verdict, without the assent and license of the justices ; and therefore if the case happen that thou now speakest of, and that the jury can in no wise agree in their verdict, and that appeareth to the justices by examination, the justices may in that case suffer them to have both meat and drink, for a time, to see whether they will agree, and if they will in no wise agree, I think that the justices may set such order in the matter as shall seem to them by their discretion to stand with reason and conscience, by awarding of a new inquest, and by setting a fine on them that they shall find in default, or otherwise, as they shall think best, by their discretion, like as they may do if one of the jury die before verdict, or if any other like casualties fall in that behalf.” Doctor and Student 271. In all these cases then, the principle is uniformly recognized, that a power is vested in the court, to be exercised however only with the greatest caution, to discharge the jury in cases of necessity, as it is termed, and to put the defendant on another trial. But the cases which have been referred to, *327 it may be said, differ in one circumstance from the case before us. In them, the whole jury came into court, one of them was by the direction of the court withdrawn, or, in other words, when called did not answer or appear, and the residue were discharged ; here, one of the jurors was absent without the consent or authority of the court. This difference in point of fact exists, but if there be any difference in principle, it is merely that the propriety of the discharge is more manifest where one has wrongfully departed and thus made the rendering of a verdict impracticable.
It was conceded by the counsel of Hall, on the argument, that on the principle of the modern cases, if a juror be seized with a fit, the jury may be discharged and another trial ordered. Why ? because a necessity exists — the cause cannot proceed. But is there not an equal necessity, to say the least, when one of the jury has absconded from his fellows ? —the cause cannot proceed — a verdict cannot he rendered. In legal contemplation a verdict is as impossible where a juror has departed and eleven only remain, as where one is suffering from a visitation of Providence, or as if he were actually dead. Moreover, in the one case the discharge of the jury is the act of the court, done deliberately, and with a view to all legal consequences; in the other the discharge is *effected without the consent of either the court or [*263 prosecuting attorney.
On this point, however, we have the direct authority of Sir Matthew Halo, and of a case cited by him. In his history of the pleas of the crown, he says, “ If after the jury are sworn and departed from the bar, one of them wilfully goes out of town, whereby only eleven remain, these eleven cannot give any verdict without the twelfth, hut the twelfth shall be fined for his contempt, and that jury may be discharged and a new jury sworn, and new evidence given, and the verdict taken oí the new jury, and thus it was done by good advice at the gaol delivery at Hertford, August lo, Car, 1, in the case of ITanscom, the departing *328 juryman.” 2 Hale P. C. 295. So in the case of Oook and others, above mentioned, Justice Duncan considers the absconding of a juror as one of the instances of extreme necessity, in -which the jury may be discharged even in case of life or member.
It ¡was remarked on the argument, with propriety and force, that the punishment of crime would be placed at great hazard, and a most dangerous temptation be held out to a juror favorable to the prisoner, if by departing from his fellows he could produce an effect equivalent to a verdict for the prisoner, and thus ensure his safety. It was answered, that the reverse of the picture should be viewed ; the power placed in the hands of a single juror who, contrary to the opinion of the others, might desire a conviction. But there is a wide difference to be seen between the two cases. In the one, he who seeks to favor the prisoner would, by departing, with certainty effect it; he who sought a conviction, however, could only induce, not a conviction, but simply a second trial. It was insisted by the counsel of Hall, thatjj punishment should be inflicted on the absenting juror for his misconduct, and the prisoner go forever quit. It is true the juror ought to be punished, and it is to be recommended that our courts should, whenever such instances occur, impose exemplary punishment, until the custom, said to be,common in some parts of the state, shall be completely repressed. But will such punishment satisfy the demands of public justice ? Suppose a murder committed. Shall the offender return to society with impunity? Though the juror is fined or imprisoned, will the innocent blood which^has been spilled cease to call aloud from the ground for vengeance ?
Upon the whole we are of opinion, that in the present *264] case, and *beyond it we mean to express no opinion, the jury were rightfully and legally discharged, and the defendant may be again pur upon trial on the same indictment, and his application for discharge ought not to prevail.
Eobjd, J., andJDRAJCE, J., concurred.