## COMMONWEALTH *versus* CALVIN WILLARD.

The purchaser of spirituous liquor sold in violation of *St.* 1838, *c.* 157, § 1, does not, under the ordinary circumstances, subject himself to any penalty, either at common law, as inducing the seller to commit a misdemeanor, or under the statute, and ma: therefore be compelled by imprisonment to testify as to such sale.

THIS was a writ of *habeas corpus* to the sheriff of this county, to bring before the Court the body of George W. Richardson.

It appeared, that Richardson was summoned as a witness before the grand jury, for the purpose of proving, that one Gould had sold to him spirituous liquors, in violation of *St.* 1838, *c.* 157, § 1 ; that he refused to testify, on the ground, that as such sale was made a misdemeanor by the statute, his testimony might criminate himself and subject him, as the purchaser, to prosecution at common law, for inducing Gould to commit a misdemeanor ; and that he was thereupon committed to prison by order of the Court of Common Pleas, for contempt.

*Oct. 2d.*    *C. Allen*, for the prisoner, cited *Rex* v. *Higgins*, 2 East, 19 ; *Rex* v. *Phillips*, 6 East, 464 ; *Commonwealth* v. *Harrington*, 3 Pick. 26 ; 1 Russell on Crimes, 45 ; *Cates* v. *Hardacre*, 3 Taunt. 424.

*Austin*, (Attorney-General,) for the Commonwealth.

*Dec. 3d.*    SHAW C. J. delivered the opinion of the Court. There is no controversy about the facts, and the question is, whether Richardson, who thus stands committed, is entitled to be discharged. The discharge has been opposed upon two grounds ; 1. That the validity and regularity of the order of the Court of Common Pleas, cannot properly be inquired into, on this summary process ; and 2. That the order was valid and regular, and that Richardson was liable to be committed for refusing to answer the question put to him, when he was duly sworn to give testimony before the grand jury.

We have not thought it necessary to give an opinion upon the first question, the views of the Court upon the other being decisive of the case.

As a general rule, there is no doubt that every court of record, both of civil and criminal jurisdiction, proceeding ac-

cording to the principles of the common law, has the power to compel the attendance of witnesses, and to require them to be sworn and to testify, upon proper occasions. This principle lies at the foundation of judicial proceedings. Without it justice could not be administered, and the law would be paralyzed. And to give effect to this power it must be so applied as to compel a specific performance of this duty. If it be said, that a witness may be indicted and punished, as for other breaches of duty, the answer is obvious, that besides the long delay and postponement of trials which this would occasion, the witnesses called to prove the case against the contumacious witness, might, in their turn, refuse to attend or to testify. Indeed, the necessity for the existence and exercise of this summary power to compel the actual and prompt attendance of witnesses, and to require them to testify, is too plain to be seriously questioned. 3 Stark. Evid. 1725 ; *United States* v. *Coolidge*, 2 Gallison, 364. The general doctrine is not much contested ; but the witness declined testifying before the grand jury, on the ground that his testimony might criminate himself and render him liable to prosecution and punishment.

No man, certainly, is bound to answer a question, as a witness, if the fact to which he is called to testify, would subject him to a penalty or forfeiture, or expose him to a criminal prosecution ; although it would be no excuse, that it would be against his mere pecuniary interest. *Bull* v. *Loveland*, 10 Pick. 9.

The witness objected to testifying, on the ground, that as the selling of spirituous liquors, without being a physician or apothecary licensed for that purpose, was made a misdemeanor by the statute, to purchase of such person necessarily implied an inducement held out to commit such misdemeanor, and that to induce another to commit a misdemeanor is an offence punishable at common law, to which the witness would be exposed. But the Court are of opinion, that the witness would not be liable to any prosecution as such purchaser, and therefore would not criminate himself or expose himself to punishment by such a purchase. No precedent and no authority has been shown for such a prosecution, and no such prosecution has been attempted within the knowledge of the Court, although a similar law has

been in force almost from the foundation of the government, and thousands of prosecutions and convictions of sellers have been had under it, most of which have been sustained by the testimony of buyers. That such a prosecution is unprecedented, shows very strongly what has been understood to be the law upon this subject.

It is difficult to draw any precise line of distinction between the cases in which the law holds it a misdemeanor to counsel, entice or induce another to commit a crime, and where it does not. In general, it has been considered as applying to cases of felony, though it has been held that it does not depend upon the mere legal and technical distinction between felony and misdemeanor. One consideration, however, is manifest in all the cases, and that is, that the offence proposed to be committed, by the counsel, advice or enticement of another, is of a high and aggravated character, tending to breaches of the peace or other great disorder and violence, being what are usually considered *mala in se* or criminal in themselves, in contradistinction to *mala prohibita*, or acts otherwise indifferent than as they are restrained by positive law. All the cases cited in support of the objection of the witness are of this description.

*Rex* v. *Higgins*, 2 East, 5, was a case where the accused had solicited a servant to steal his master's goods, and it was held to be a misdemeanor. The crime, if committed pursuant to such solicitation, would have been a felony.

*Rex* v. *Phillips*, 6 East, 464, was a manifest attempt to provoke another person by a letter, to send a challenge to fight a duel. For although the direct purpose of the letter of the defendant, was to induce the other party to send a challenge, which is technically a misdemeanor, yet the real object was to bring about a deed, which is a high and aggravated breach of the public peace, and where it results in the death of either party, is clearly murder. It was averred to be done with an intent to do the party bodily harm and to break the king's peace, and such intent was considered a material fact to be averred and proved.

A case depending upon a similar principle in our own books, is that of *Commonwealth* v. *Harrington*, 3 Pick. 26, in which it was held, that to let a house to another, with an intent that

Common-<br>wealth<br>v.<br>Willard.

it should be used and occupied for the purposes of prostitution, with the fact that it was so used, was a misdemeanor. The keeping of such a disorderly house has long been considered a high and aggravated offence, criminal in itself, tending to general disorder, breaches of the public peace, and of common nuisance to the community. It is in cases of this character only, that the principle has been applied ; but we know of no case, where an act which, previously to the statute, was lawful or indifferent, is prohibited under a small specific penalty, and where the soliciting or inducing another to do the act, by which he may incur the penalty, is held to be itself punishable. Such a case perhaps may arise, under peculiar circumstances, in which the principle of law, which in itself is a highly salutary one, will apply ; but the Court are all of opinion, that it does not apply to the case of one, who, by purchasing spirituous liquor of an unlicensed person, does, as far as that act extends, induce that other to sell in violation of the statute.

There is another view of the subject, which we think has an important bearing on the question, if it is not indeed decisive. The statute imposes a penalty, upon any person who shall sell. But every sale implies a purchaser ; there must be a purchaser as well as a seller, and this must have been known and understood by the legislature. Now, if it were intended that the purchaser should be subject to any penalty, it is to be presumed, that it would have been declared in the statute, either by imposing a penalty on the buyer in terms, or by extending the penal consequences of the prohibited act, to all persons aiding, counselling or encouraging the principal offender. There being no such provision in the statute, there is a strong implication, that none such was intended by the legislature.

*Ordered*, that the prisoner be remanded to the custody of the sheriff, to abide the order of the Court o Common Pleas, under which he stands committed.