THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES LEWIS, PLAINTIFF IN ERROR.

Submitted December 7, 1911—Decided June 13, 1912.

1. The affixes Sr. and Jr. do not form part of a name but are descriptive merely, hence, in legal contemplation, their presence or absence is immaterial.

2. It lies in the discretion of the trial court to permit a party to cross-examine its own witness, when it appears that such witness is unwilling and hostile, and the party offering such witness has been surprised thereby.
3. In a criminal case, the court has power to withdraw a juror, but this action rests in the sound discretion of the court and is to be exercised only in very extraordinary and striking circumstances, in order to prevent the failure of justice.

On error to Camden Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and VOORHEES.

For the plaintiff in error, *Harry C. Kramer, Albert S. Woodruff, Floyd H. Bradley* and *Robert H. McCarter.*

For the defendant in error, *Henry S. Scovel,* prosecutor of the pleas, and *Charles A. Wolverton,* assistant prosecutor.

The opinion of the court was delivered by

VOORHEES, J. The defendant was tried and convicted upon an indictment containing five counts, the first two charging him with knowingly counseling, procuring and advising Lewis Baker, not being a qualified voter, to vote on the 8th day of November, at an election at the first election district of the fourth ward of the city of Camden, and thereat falsely to personate Edward Ferat, who was a legal voter, and duly registered, and that thereupon Baker did unlawfully vote at said election as though he was, and as being said Edward Ferat, and upon the name of said Ferat.

The remaining three counts charge that the defendant, knowing that Lewis Baker was not a legal voter at said election district, did counsel and procure said Baker to vote at said election and in said district.

With the writ of error, the entire record and proceedings had upon the trial have been returned, pursuant to the one hundred and thirty-sixth section of the Criminal Procedure act.

The testimony showed that there was registered from the home of defendant, at 205 Spruce street, a man named Lewis Baker; that on the morning of election day a person alleging himself to be Lewis Baker presented himself to the election board of the first precinct of the fifth ward and offered to vote on the name of Lewis Baker; he was challenged on the ground that he was not such person, and upon being questioned was told by the defendant in this case, who was a policeman in the city of Camden, that he need not answer any questions, after which defendant vouched for him as being a legal voter, and he voted. Immediately after he voted, he left the booth, followed by the defendant, who engaged with him in conversation, during which, as some of the testimony indicated, the defendant told him to go up to Golden's, meaning the first precinct of the fourth ward, where Sergeant Golden, another policeman and Republican worker, was in charge; that immediately after such conversation the defendant and the alleged Lewis Baker, went in the direction of said fourth ward polling place; that after going some distance, the defendant left Baker, the latter continuing on toward the voting place; at the corner of Fifth and Arch streets, one square from the voting place, the voter was met by Sergeant Golden, and taken to the polling place of the fourth ward, and upon entering it he gave the name of Edward Ferat, who was registered in such election district. It then appeared that certain young men, who had followed him from the last voting place, informed the board that such person had already voted in the first precinct of the fifth ward; that upon giving such information one of the young men was attacked by Sergeant Golden and was thrown out of the election booth; the voter was then challenged and the Democratic members of the board voted against receiving the ballot, the Republican members voting in favor of it, and the vote, notwithstanding such objection, was placed in the box. The defence was that the person who voted in the first precinct of the fifth ward, and for whom the defendant vouched, was a genuine legal voter, and was the Lewis Baker who was registered from 205 Spruce street, and that the defendant had had nothing to do

with said person going from that precinct where he first
voted to the last mentioned precinct for the purpose of cast-
ing an illegal vote.

There was also evidence showing that in the fifth ward of
Camden, Lewis Baker, Sr., and Lewis Baker, Jr., resided,
being father and son, and had voted in that ward for several
years, both being registered from the same address for the
November election, and that both actually voted on that day;
the father in the afternoon and the son in the forenoon.
They were of different appearance and they were distinguished
by the use of junior and senior.

The charge in the indictment was that the defendant coun-
seled Lewis Baker to vote, without describing him by the
addition of either junior or senior. The testimony offered
by the state, and which was objected to at the trial, concerned
the acts of Lewis Baker, Jr.

It is now argued that where father and son bear the same
name, the use of that name alone without suffix will *prima
facie* refer to the father, and that the man should have been
described in the indictment as Lewis Baker, Jr.

The English cases are to the contrary. 3 *Russ. Cr.* 314,
315, citing *Rex* v. *Peace*, 3 B. & A. 579; *Hodgson's Case*, 1
*Lew.* 236; *Rex* v. *Bailey*, 7 C. & P. 264, and others. See
also *Whart. Cr. L.*, § 249. The cases generally hold that
senior and junior form no part of the name, but are mere
matter of description, and that their addition to or omission
from the name in a legal document is immaterial and of no
effect. 17 *Am. & Eng. Encycl. L.* 1036, and 21 *Id.* 310, where
the cases are collected.

In *Johnson* v. *Ellison*, 4 T. B. *Monr.* 526, it is said
"junior" is no part of the name of a man. It is neither
"the name of baptism, nor the name of his family. It is an
addition to distinguish between two or more persons bearing
the same name. Supposing there are two persons named
James Wyatt, usually distinguished by the addition of senior
or junior; the defendant has made the note to one of them;
but to which, the note on its face does not certainly and con-
clusively designate. To which of the two the note was in

truth made and delivered is a question of fact; it rests in averment. * * * It is a question of identity as to the right owner of the note which cannot be raised upon demurrer."

The indictment having named Baker, without designating whether junior or senior was intended, evidence was admissible as to the younger man identifying him as the person intended.

There was evidence that Baker was challenged on the ground of his name and of his residence, and that the defendant then vouched for him, stating that Baker was his brother-in-law. The reasons assigned for reversal upon this point are without merit.

A series of objections is made to the admission of evidence concerning alleged irrelevant and immaterial facts and circumstances. The first instance particularly pointed out regards certain answers to questions put to the witness Hill, one of the election officers.

A young boy, after Baker had been vouched for by the defendant, came up to the witness Hill and gave him some information, and as a result of that information, witness stated that he gave the boy certain instructions. Then came the question, "What were those instructions?" This was objected to, because it was in the absence of the defendant. He was allowed to answer that he "told the boys to watch Lewis Baker, where he went, and that the boys followed him." It is clear that the statement to the boys has not caused the defendant manifest wrong and injury which is necessary to cause a reversal of the judgment.

The next objection is that the details immediately preceding the deposit of the ballot did not indicate a counseling by the defendant or the knowledge by him of Baker's disqualifications, and that while the admission of testimony that at the time that Baker cast his vote, he was challenged, that the defendant vouched for him as a legal voter, and what was said at the time by a member of the election board, and whether the vote was received without protest, and whether the election board took a vote to receive or reject the ballot

on the ground on which it was challenged, as well as the incidents occurring before and after Baker cast his vote in the fourth ward, are admitted to be correlated incidents, but without probative force, upon the real issue, viz., counseling Baker to vote.

As above stated, it appeared that Baker had voted in the fifth ward, notwithstanding a challenge, and then went to the fourth ward, and again voted there. There was evidence from which the inference might be drawn that the defendant advised him to do so. It was therefore proper to prove what took place at each poll touching Baker's vote.

All these facts had a bearing upon the knowledge of the defendant that Baker was not a legal voter, and were so related to the main issue as to be admissible within the discretion of the court.

The only witness for the state who could connect Baker with the defendant was a young man named Kenny. His evidence was quite uncertain, and it was evident that he was a hostile witness and that the prosecutor had been surprised by his testimony. The prosecutor was thereupon allowed to cross-examine him regarding statements which the witness had made shortly before the trial. This was a matter resting in the discretion of the trial court. Notwithstanding the remarks of the prosecutor, charging that some one had "gotten next" to the witness, we fail to find that legal error was committed.

The prosecutor, however, continued this method of examination and finally asked the witness if one Gordon had not told the witness "to tell his father that he, Gordon, had a job for him, working for the city, and you are subpœnaed, why can't you make this a little easy." The court then stopped the prosecutor and the counsel for the defendant said:

"I pray an exception to that and move the withdrawal of a juror by virtue of what has taken place, certainly a most improper thing for an officer of the law to undertake to make evidence of a private talk between himself and this witness in justification of an argument he is making to your honor. I think it is improper."

"The Court: 'No, I rule that out, Mr. Scovel.'

"Mr. McCarter: 'I move the withdrawal of a juror, sir.'

"The Court: 'I will not let you withdraw a juror, Mr. McCarter.'

"(Whereupon the defendant, by his counsel, prays a bill of exceptions which is allowed and sealed accordingly.)

"C. V. D. JOLINE, (Seal.)

"Judge."

The withdrawal of a juror seems to be within the discretion of the court, and the authorities hold that in a civil case, it may be done by the consent of the parties, or even by the court in its discretion. That in a criminal case also the court has power to withdraw a juror, but this action rests in the sound discretion of the court, in order to prevent the failure of justice. *United States* v. *Coolidge, 2 Gall. 364.* Story, Circuit Justice, there said:

"It is now held that the discretion exists in all cases, but is to be exercised only in very extraordinary and striking circumstances. Were it otherwise, the most unreasonable consequences would follow."

The cases on this subject are collected under the notes appended to *Usborn* v. *Stephenson, 48 L. R. A. 432.*

Now, being in the discretion of the court, a strict bill of exceptions will not lie to the refusal, nor can it be availed of under the one hundred and thirty-sixth section of our Criminal Procedure act, unless its refusal resulted in manifest wrong and injury to the defendant, and it is evident that such was not its result.

After the jury had retired, following the charge of the court, an objection was made by the defendant in the following form to the summing up to the jury on the part of the state:

"I want to note that I consider the remarks of the prosecutor in regard to a system and that this was part of a system and all he said in that regard as improper. If there is any error to be had from that or advantage to be had from it, I want the advantage of it."

This subject is controlled by the cases of *State* v. *Lockman, post p.* 168, and *State* v. *Parker, post p.* 172, and the assignment has no merit.

The judgment must be affirmed, except as to form. It is like that in *State* v. *Carrigan,* 53 *Vroom* 225. Following the procedure in that case, this cause will be sent back to the trial court, to the end that a proper sentence may be there imposed upon the defendant.