**HIMMELFARB v. UNITED STATES.**

**ORMONT v. UNITED STATES.**

Nos. 11662, 11666.

United States Court of Appeals Ninth Circuit.

June 3, 1949.

Rehearing Denied Aug. 1, 1949.

William Katz, Los Angeles, Cal., for appellant Himmelfarb.

Daly B. Robnett and Benjamin F. Kosdon, Los Angeles, Cal., for appellant Ormont.

James M. Carter, U. S. Atty., Ernest A. Tolin, Asst. U. S. Atty., William Strong, Sp. Asst. U. S. Atty., Los Angeles, Cal., for the United States.

Before MATHEWS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

STEPHENS, Circuit Judge.

Sam Ormont and Phillip Himmelfarb were, on January 22, 1947, jointly charged by a federal grand jury with four counts under Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). Count one charged that Ormont and Himmelfarb attempted to defeat and evade federal income tax owed by Ormont for the calendar year 1944 by filing a false tax return understating Ormont's net income and income tax for that year. Count two contained

similar charges against both in connection with Himmelfarb's return for income and income tax for 1944. Counts three and four contained similar charges against Ormont as to his returns for the years 1942 and 1943. Individual returns were filed by Himmelfarb and Ormont at the proper times as to income received in the conduct of the Acme Meat Co. An information return was subsequently filed by them for "Miscellaneous Enterprises", asserted by them to be a joint venture, for the fiscal year beginning May 1, 1944, and ending April 30, 1945, in the sum of $71,388.84 with no deductions or other information stated and disclosing an equal division between them of income.

There is much in this opinion which applies to the cases of both defendants-appellants. There is considerable in the opinion which applies solely to either one or the other of the defendants-appellants. Generally speaking, it will be obvious what portions appertain to either or both. Where it has seemed useful we have plainly stated the defendant-appellant concerned.

Motion for dismissal of the indictment was denied and a motion for a bill of particulars was denied in part and granted in part. Pleas of not guilty to each of the counts were entered. The court dismissed counts two, three and four as to Ormont and count one as to Himmelfarb. A jury trial was had, and Ormont was found guilty upon count one and Himmelfarb guilty on count two. Motions for acquittal and for a new trial were denied and each has separately appealed.

The evidence discloses that Sam Ormont owned and operated a wholesale meat business under the fictitious name of Acme Meat Co. in Vernon, California, and employed Phillip Himmelfarb who, prior to May 1, 1944, had been a government licensed meat wholesaler and packer. After this latter date the two operated the business in partnership until (at least) April 30, 1945. The books of the Acme Meat Co. were kept on a calendar year basis. Shortly before the filing of the joint return, heretofore mentioned, investigations were made concerning the income tax returns of both appellants for the years 1942 to 1944 inclusive. According to the evidence, income from sales of meat, made within ceiling prices under OPA, were reported on invoices and recorded in the company books and appellants' returns for 1944 were based on these figures. It is indicated that "bonus" or "overceiling" payments of additional cash sums paid by customers of Acme Meat Co. were received but not reported on the books nor were they reported for income tax purposes for the year 1944; as to all of which both appellants were well aware.

Further, there is testimony that income from certain sales was shown on invoices which were not transmitted to the appellants' bookkeeper and therefore were never entered nor included in the books from which the income returns were made. These unreported invoices or lists were kept in a desk drawer at the plant. There is also indication of some falsity in keeping of records which goes to the general intent of appellants to misrepresent their income.

Evidence is in the record of a partnership return declaring additional income of some $71,000.00, claimed to have come from the so-called "Miscellaneous Enterprises", bank records and bank documents pertaining to each appellant, records of business dealings, invoices, canceled checks, transcripts of portions of the records of the Acme Meat Co. and bond records.

There is testimony that Ormont made admissions to Internal Revenue Agents which were adverse to his interest and which were recorded at the time made in an affidavit signed by Ormont, and that Ormont later retrieved the affidavit by subterfuge and destroyed it. There is also testimony to the effect that the appellants operated a partnership and divided profits therefrom equally; that the $71,000.00 claimed to have come from "Miscellaneous Enterprises" came from so-called "bonuses" received in the Acme Meat Co. business and not recorded in the company's books. However, there is evidence that a private record thereof was kept by Ormont in a small memorandum book claimed to have been seen by government witness Bircher, Special Agent for the Bureau of Internal Revenue. He stated that he saw a page in the back of the book on which an amount a little in excess of $35,000.00 was itemized, something in excess of $11,000.00 being re-

corded as having been earned from secret and unrecorded charges or bonuses from May 1, 1944, to January 5, 1945, and the balance or some $23,000.00 being recorded as earned from such sources from January 5, 1945 to April 30, 1945.

Himmelfarb was represented at the trial by Attorney Katz, and Ormont was represented at the trial by Attorney Robnett. At the outset it was agreed that motions, objections and stipulations made on behalf of either defendant would be considered as made on behalf of the other defendant as well. The district attorney in the presence of the panel of prospective jurors referred to another criminal case pending against defendants. The court ordered the reference stricken and instructed the prospective jurors to disregard it entirely, and the jury was sworn to try the case. Thereafter Katz made a motion to declare a mistrial and to discharge the jury. The following colloquy occurred:

District Attorney: "Your Honor, I would have no objection to the calling of another panel. I don't want to injure the defendants by a statement which I didn't realize was improper when I made it. I will agree, if your Honor sees fit, to call another panel of jurors."

The Court: "I will grant the motion to withdraw the jury and declare a mistrial * * *".

The Court: "May it be stipulated that the jury may be excused without being brought back to court?"

Both counsel entered into such stipulation.

Thereafter, Robnett on behalf of Ormont made a motion that the case be dismissed and that a plea of once in jeopardy be entered. Katz specifically disclaimed the motion. The court denied it. Another jury found the verdict upon which the judgment here appealed from was based.

It is argued on appeal that the latter ruling was error and that the dismissal, after the first selected jury was sworn, constituted "once in jeopardy."

It seems clear to us that the stipulation, whereby it was agreed that the stipulations, motions and objections of each attorney on behalf of one defendant should also be considered as made on behalf of the other defendant, was applicable to the ordinary procedure of the trial, and not to constitutional rights of defendants. And it is plain that no stipulation of counsel waiving his client's constitutional right could be effective without the client's specific assent. In absence of express authority, an attorney has no power to surrender substantial legal rights of his client. 7 Corpus Juris Secundum, Attorney and Client, § 100c, p. 922.[1] Since there was no such assent given, the stipulation was ineffective as a waiver of Ormont's plea, through his counsel. To hold that Ormont, or indeed, Himmelfarb, acquiesced in the discharge of the jury is "to condone a dangerous laxity on the part of the trial court in the discharge of its duty to preserve the fundamental rights of an accused." Glasser v. United States, 315 U.S. 60, 72, 62 S.Ct. 457, 465, 86 L.Ed. 680. Furthermore, "whether there is a proper waiver should be clearly determined

---

[1] The right or immunity against being placed twice in jeopardy for the same offense is a personal right, an individual privilege, and may be waived by the accused, either expressly or impliedly. Brady v. United States, 8 Cir., 24 F.2d 397, 399, 405, certiorari denied 278 U.S. 603, 49 S.Ct. 10, 73 L.Ed. 531. Whether a waiver has occurred depends upon the circumstances of each case. A waiver involves the intentional relinquishment or abandonment of a known right or privilege. A strong presumption is raised against the waiver of fundamental rights by an accused. His constitutional rights are jealously and vigilantly guarded. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461; Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680; Von Moltke v. Gillies, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309; McCrea v. Jackson, 6 Cir., 148 F.2d 193, 197. The mere silence of an accused or his failure to object or to protest a discharge of the jury cannot amount to a waiver of this immunity. "It would be a harsh rule to hold that defendant consented to a withdrawal of the case from the jury simply because he interposed no objection." State v. Richardson, 47 S.C. 166, 25 S.E. 220, 222, 35 L.R.A. 238. There must be more in order to overcome the presumption.

by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357. "The fact that the court and the district attorney regarded the defendants as consenting to the course that was taken, ought not, in the absence from the minutes of the court of any statement that they consented, to conclude them." United States v. Watson, Fed.Cas.No.16,-651, 3 Ben. 1. In Barrett v. Bigger, 57 App. D.C. 81, 17 F.2d 669, 670, certiorari denied, 274 U.S. 752, 47 S.Ct. 765, 75 L.Ed. 1332, the court found accused's consent in the following entry: "Cont'd to Nov. Sess. 1921, on request of Dft.; consented to by Dist. Atty., Prosecutor, and Private Counsel."

■■■■ The real issue presented is whether or not there was a legal necessity supporting the discharge of the first jury. It is said in Thompson v. United States, 155 U.S. 271, 274, 15 S.Ct. 73, 74, 39 L.Ed. 146, citing United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165; Simmons v. United States, 142 U.S. 148, and Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429: "Those cases clearly establish the law of this court that courts of justice are invested with the authority to discharge a jury from giving any verdict whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and that the defendant is not thereby twice put in jeopardy, within the meaning of the Fifth Amendment. * * *." The proposition was clearly stated by Judge

Story: "The question is simply this: A party is on trial before a jury, and a circumstance occurs, which will occasion a total failure of justice if the trial proceed; have the court, in such an emergency, power to withdraw a juror? * * * It is now held, that the discretion exists in all cases, but is to be exercised only in very extraordinary and striking circumstances. Were it otherwise, the most unreasonable consequences would follow." United States v. Coolidge, 25 Fed.Cas. pages 622, 623, No.14,858, 2 Gall. 364. Thus, a court has the power to discharge a duly empaneled and sworn jury, before verdict, without abridgement of the constitutional guaranty, if there exist urgent circumstances or an emergency which by diligence and care could not have been averted and which would thwart the administration of justice.[2] "* * * when it appears that a free and fair trial cannot be had it ought to be stopped, even over objection of the accused, and the Constitution will not prevent another and better trial." Sanford v. Robbins, 5 Cir., 115 F.2d 435, 439, certiorari denied 312 U.S. 697, 61 S.Ct. 737, 85 L.Ed. 1132. It has been held that the discharge of the jury, after jeopardy had attached and before verdict, would not sustain a plea of once in jeopardy where the jury could not agree, United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165, supra; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Dreyer v. People of State of Illinois, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79; Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734, where a juror was found to have sworn falsely on voir dire examination as to acquaintance with accused, Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968, where

---

2 Ordinarily jeopardy attaches when a jury is sworn to try the case. See Cornero v. United States, 9 Cir., 48 F.2d 69, 74 A.L.R. 797, infra. If the constitutional inhibition against twice in jeopardy is to be given its strict meaning and jeopardy attach when the jury is sworn, the permitted once in jeopardy has been used. The text of our opinion shows, however, that the accused is not always immune from trial before a jury merely because a former jury had been sworn to try his case. The Supreme Court has decided that in numerous circumstances either the jeopardy attaching when the jury was sworn didn't count or didn't attach when the jury was sworn. Numerous high authorities state the case as though the attached jeopardy has been excused for one reason or another. Whether the result of no jeopardy is reached by holding that it did attach but was released or that it did not attach at all, is not highly important. Suffice it to say that we think it more consonant with the constitution to hold to the latter theory because we have not said in the opinion that jeopardy attached with the swearing of the first jury.

several jurors had read newspaper reports, Simmons v. United States, supra, where a juror was discovered to have served on the grand jury which found the indictment, Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146, supra, or on the jury of a former trial of the same cause, Martin v. State, 163 Ark. 103, 259 S.W. 6, 33 A.L.R. 133, where a juror, the court, or the accused became ill, incapacitated, or unavailable, United States v. Potash, 2 Cir., 118 F.2d 54, certiorari denied, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540; United States v. Haskell, Fed.Cas.No.15,-321, 4 Wash.C.C. 402; United States v. Fernandez, 1 Porto Rico Fed. Rep. 453; Wharton's Criminal Law, 12th ed., Vol. 1, § 395, where a member of a juror's family became seriously ill or died, Hawes v. State, 88 Ala. 37, 7 So. 302; Woodward v. State, 42 Tex.Cr.R. 188, 58 S.W. 135, where it was discovered after the jury was sworn and evidence adduced that a juror was prejudiced, United States v. Morris. Fed.Cas.No.15,815, 1 Curt. 23, or related to the accused, United States v. McCunn, D.C., 36 F.2d 52, where a prisoner tampered with some of the jury, United States v. Haskell, supra, where a prejudicial exclamation was uttered by the accused during jury view of the crime scene, State v. Slorah, 118 Me. 203, 106 A. 768, 4 A.L.R. 1256, and where an essential witness for the prosecution refused to be sworn, having conscientious scruples against taking an oath. United States v. Coolidge, 25 Fed.Cas. page 622, No.14,858, 2 Gall. 364, supra. On the other hand, it has been held that the discharge of the jury on account of the inability of the prosecution to proceed with the trial because of the absence of witnesses for the Government operated as an acquittal. United States v. Watson, 28 Fed.Cas. pages 499, 501, No.16,651, 3 Ben. 1, supra; Cornero v. United States, 9 Cir., 48 F.2d 69, 74 A.L.R. 797. Compare United States v. Coolidge, supra, and Hunter v. Wade, 10 Cir., 169 F.2d 973, affirmed sub nom. Wade v. Hunter, 1949, 336 U.S. 684, 69 S.Ct. 834, " * * * in the federal courts the recognized rule is that discharging a jury before verdict is a matter within the sound discretion of the trial court. * * * A defendant who pleads double jeopardy has the burden of proving" abuse of such discretion. United States v. Potash, 2 Cir., 118 F.2d 54, 56, certiorari denied, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540. "The appraisal of the fortuitous incidents of a trial in relation to an accused's rights is a matter primarily for the judgment of the trial judge in the immediate situation, and, unless there has been such an unwise exercise of his discretion as to amount to an abuse, his action will not be disturbed on appeal." Emery v. United States, 8 Cir., 127 F.2d 561, 562. See also Kastel v. United States, 2 Cir., 23 F.2d 156, certiorari denied 277 U.S. 604, 48 S.Ct. 600, 72 L.Ed. 1010. We think the court did not abuse its discretion.[3]

Specifications of error covering a motion to dismiss the indictment, motion for a bill of particulars, and the motion for a con-

[3] The following cases are relevant:

In Lovato v. State of New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244, the defendant was arraigned and pleaded not guilty to an indictment for murder. Later, without withdrawing the plea, he demurred to the indictment as not charging an offense. The demurrer being overruled, both sides being ready for trial, a jury was duly empaneled and sworn, but on motion of the prosecuting officer the court dismissed the jury and directed that the defendant be arraigned anew. This was done forthwith, the accused pleaded not guilty again, and both sides being ready, the same jury was sworn once more and the trial proceeded to a conviction. The court held that there was no double jeopardy, saying, 242 U.S. at page 201, 37 S.Ct. page 108: "Under the circumstances there was, in the best possible view for the accused, a mere irregularity of procedure which deprived him of no right. * * * it is apparent that the confusion was brought about by an overcautious purpose on the part of the court to protect the rights of the accused. Whether or not, under the circumstances, it was a necessary formality to dismiss the jury in order to enable the accused to be again arraigned and plead, the action taken was clearly within the bounds of sound judicial discretion." The decision in Lovato's case was favorably distinguished in Cornero v. United States, supra.

In Blair v. White, 8 Cir., 24 F.2d 323, 324, the United States attorney intro-

tinuance until a bill of particulars was furnished, are argued together in the briefs. Error is claimed because the court declined to dismiss the indictment "on the ground of multifariousness and uncertainty in that it did not state a public offense, did not show that any tax was due or unpaid or how the filing of a victory return could defeat or evade the tax for 1944, what portion was alleged victory tax, what portion normal tax, and what portion surtax, and that a felony and misdemeanor were improperly joined and not separately stated."

We are of the opinion that the indictment sufficiently charges a violation within the law in question [4] and we do not find any reversible error therein. The reference to a victory tax was surplusage as there was no such tax for 1944. Under the motion for a bill of particulars, "the items, sums, figures and facts showing the basis of the alleged income and income tax and the sums from which the Government derived such facts, items, and figures from which it made its calculations" were demanded. The trial court granted a bill of particulars in certain respects and suffi-

---

duced, after the jury was sworn, a record of a previous conviction of defendant before defendant had been called as a witness. Defendant's counsel moved the court that the jury be discharged for such misconduct. It was discharged, and thereafter a trial was had before another jury, resulting in a conviction. A plea of former jeopardy was rejected. The court relied mainly on Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146, supra, "in which much the same situation was presented."

In United States v. Giles, D.C.Okl., 19 F.Supp. 1009, the prosecution was for conspiracy to defraud the United States by corrupt administration of the F.E.R.A. The court discharged the jury over accused's objection because of the court's remarks, relating to extravagance and waste of relief funds, questioning good faith of the prosecution, and calling attention to want of prosecution of others. Another jury was sworn, and a verdict of guilty followed. Defendant's plea of once in jeopardy was denied. The court stated 19 F.Supp. at pages 1012, 1013: "This record forces the conclusion that the trial judge, in the exercise of the sound discretion vested in him, was justified in taking the case from the jury and declaring a mistrial. * * * If he acted impartially, as we must assume he did, his action was not only justified but required." And see Ercoli v. United States, 76 U.S.App. D.C. 360, 131 F.2d 354, 355, where it was said that if the trial judge varies the order of proof and receives evidence out of its logical order, which it is his discretion to do, it may become necessary later for him to declare a mistrial.

In the words of Lovato's case, the issue presented on this appeal was brought about by an over-cautious purpose on the part of the court to protect the rights of the accused. At the time of the discharge, no evidence had been heard. The court had reason to be fearful of prejudice detrimental to the defendants. Apropos, it was said in McGuire v. United States, 273 U.S. 95, 99, 47 S.Ct. 259, 260, 71 L.Ed. 556; "A criminal prosecution is more than a game in which the government may be checkmated and the game lost merely because its officers have not played according to rule." On the other hand, compare what was said in Cornero v. United States, 9 Cir., 48 F.2d 69, at page 71, 74 A.L.R. 797, supra: "We are here dealing * * * with a fundamental right of a person accused of crime, guaranteed to him by the Constitution, and such right cannot be frittered away or abridged by general rules concerning the importance of advancing public justice." As indicated ante, there it was held that the failure of the district attorney to have present his witnesses did not necessitate as a matter of law the discharge of the jury. But the court in the Cornero case further remarked 48 F.2d at page 71: "The situation presented is simply one where the district attorney entered upon the trial of the case *without sufficient evidence to convict.*" [Emphasis ours.]

[4] 26 U.S.C.A. § 145(b). "Failure to collect and pay over tax, or attempt to defeat or evade tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

cient details were provided as to those items which the government had to establish. The granting of a bill of particulars is within the discretion of the trial court and the court did not abuse its discretion. See Maxfield v. United States, 9 Cir., 152 F.2d 593.

The motion for continuance was "based upon the ground of surprise, inability to prepare for defense, the cause of insufficiency of the indictment and lack of proper bill of particulars." We do not see that the appellants were caught by surprise and were thus unprepared to meet the charges. It is not necessary to put all the evidence into the pleading. In Maxfield v. United States, 9 Cir., 152 F.2d 593, at page 596, supra, the court states: "It is claimed that the court was in error in denying appellants' motion for a bill of particulars; and Singer v. United States, 3 Cir., 58 F.2d 74, is relied on as authority. In the Singer case the indictment failed to distinguish net from gross income; and the accused were surprised by the government's evidence to the extent that long recesses had to be granted on several occasions. There, also, the books of the accused were in the hands of the government and were withheld from the use of the defense. No comparable situation existed here. The indictments clearly informed appellants of the annual amount of income on account of which taxes were allegedly evaded; and the figures given were intelligibly broken down. Appellants had their records in their own possession and were in position to analyze the general allegations of the bill. There was no showing or appearance of surprise, nor was any continuance requested while the trial was in progress. The granting or denial of a bill of particulars is in the sound discretion of the trial court, and if no abuse or prejudice appears its action in denying the application will not be disturbed on appeal. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; Robinson v. United States, 9 Cir., 33 F.2d 238, 240. The rule has been applied in income tax evasion cases. Cf. Paschen v. United States, 7 Cir., 70 F.2d 491; United States v. Skidmore, 7 Cir., 123 F.2d 604."

Two specifications of error are combined in argument in which it is contended that the court erred in denying Ormont's motion for immunity and for dismissal on the ground that he was subpoenaed and required to testify before the Grand Jury without being advised of his constitutional rights on matters which are involved in charges set forth in the indictment in this case. It was urged upon the trial court that all evidence should be suppressed and immunity granted. Ormont had been subpoenaed and questioned before the Grand Jury in regard to an investigation, then pending, of alleged violations of the Emergency Price Control Act, 50 U.S. C.A.Appendix, § 901 et seq., in the purchase and sale of meat. He was asked questions concerning the prices he paid for having cattle slaughtered and what the "extra services" were which were charged to him, and what profits were and could have been made. The questions covered several years including 1944. There were also questions concerning various other amounts paid for special services.

Appellant Ormont contends that a witness subpoenaed and compelled to testify is entitled to immunity from future prosecution, whether he claimed it or not at the time he gave the testimony or whether or not he refused to answer on the ground of incrimination. We think it unnecessary to consider this point for even if appellant is right, and we do not so hold, we do not agree that the principle rules this case. We have very carefully reviewed the evidence given by Ormont before the Grand Jury. It has no relation to income tax matters and was elicited in an attempt by the Grand Jury to find whether or not Ormont had been charged illegal sums for slaughtering animals. How or in what manner this inquiry was related to the charge in the instant case is not divulged in the record or in appellants' briefs except as follows which we quote from the brief: "The evidence given by Mr. Ormont before the Grand Jury not only affected the matter of sales of meat, but the testimony with regard to payment of extra charges for slaughtering which would, of necessity, affect his income and his testimony as to

the invoices or such matters and recording of such charges on his books, if such charges were in violation of the OPA regulations, and, presumably, they were, else King and Southern California Meat Company would not have entered pleas of guilty to the indictment, such extra charges might not be a proper reduction of his income." The evidence referred to is that Ormont paid $1.00 per head for slaughtering a beef and sometimes extra services amounted to as high as $3.00. This evidence is a far cry from revealing anything as to Ormont's income tax. Appellant seeks to suppress not only the evidence adduced before the Grand Jury, which was not a basis herein of proof, but all evidence in the case. The testimony in this case is so remote from the testimony given by Ormont before the Grand Jury that no question of suppression of evidence or immunity can be premised upon it.

Appellant Ormont, under Specification of Error No. 7, claims error in admission of the government's exhibits Nos. 1 to 4. No. 1 consisted of an individual income tax return for 1942 and No. 2 consisted of a return for 1943. Charges which these exhibits referred to were dismissed. Exhibit 3 referred to the individual income tax for the year 1944 which is the basis for count one, the count upon which this appellant was declared guilty. It is objected that the exhibit is not within the charge in that count because the return was for ordinary taxes and not for a victory tax, whereas the indictment charges the filing of a false and fraudulent income and victory tax. No argument is made concerning exhibit No. 4. Objections and argument are limited to No. 3 for variance from the indictment. Proof was entered as to the difference between an individual income tax return and an income and victory tax return. It is argued that "Count 1 of the indictment specifically charges the manner in which and the means by which the Government alleged and claimed defendant and appellant committed the alleged crime. The first such "manner and means" is set forth as follows:

"'(1). By preparing and causing to be prepared, and filing and causing to be filed with the Collector of Internal Revenue for the Sixth Internal Revenue Collection District of California a false and fraudulent income and "victory tax" return * * *' wherein it is claimed that he falsely stated the amount of his income and victory tax. Then they set forth amount of income he reported and the amount of tax he reported and then set forth what they claimed the income tax was, which is a figure some $23,000.00 greater, and the tax was, which is some $14,000.00 greater."

Several cases are cited for the rule that proof must correspond to the allegations and that if there is a discrepancy in the indictment, it is a variance; further, that allegations which are descriptive of the way in which a crime is committed cannot be rejected as surplusage, but must be proved as alleged.

The fact that the indictment charged that a false and fraudulent income and victory tax return was filed, is not fatal error. The word "victory" was surplusage and unnecessary to the charge. The real offense alleged was a wilful attempt to evade and defeat a legal income tax. The word "victory" is not "descriptive" of that which is necessary to the charge, as stated in People v. Deysher, 2 Cal.2d 141, 40 P.2d 259. The charge was that Ormont "did wilfully, knowingly, unlawfully and feloniously attempt to defeat and evade a large part of the income tax due and owing by Sam Ormont to the United States of America for the calendar year 1944 (1) by preparing and causing to be prepared and filing * * * a false and fraudulent income and victory tax return wherein they stated that his net income for said calendar year was the sum of $12,174.57 for income tax purposes, and that the amount of tax due and owing thereon was the sum of $3626.58, whereas, as they then and there well knew, his net income for the said calendar year was the sum of $36,982.52 for income tax purposes, upon which said net income he owed to the United States of America an income tax of $18,143.12; and (2) by concealing and attempting to conceal from the said Collector and any and all proper officers of the United States the true and correct gross and net incomes received by him during the said calendar year and

the sources thereof." [Emphasis ours] It can be clearly seen that the word "victory" was surplusage, as the charge is a wilful evasion of income tax and no other conclusion could have been drawn by appellant.

The California cases cited by appellant may be convincing but are not authority in a federal court. However, the cited cases do not support his claim when applied to the instant facts.

■ Under Specification of Error No. 8 it is argued that the admission of government exhibits 38 and 39 and the introduction of any testimony in connection therewith by witness Ernest Link, was error. This evidence was objected to as incompetent, irrelevant and immaterial, and that it should not be shown to the witness or any testimony admitted thereon. The exhibits are 1942 invoices of the Acme Meat Co. It is claimed that "there was no sufficient foundation and hence they were incompetent because it was not shown these exhibits were not entered on the books and properly taken into account in 1942."

There is evidence that the exhibits were not entered by the bookkeeper, and it can be reasonably concluded that they were therefore never entered. We do not agree that the exhibits were incompetent and hence inadmissible. Ernest Link, the bookkeeper, stated that they were not entered because they did not bear his entry or check mark; that he was the party who kept the books and that he always made a check mark on the invoices when he entered the amounts of the invoices in the books. It is clear that these invoices affected the income tax due. The books were not available and Link's testimony was in relation to ac-counts in the books and also as to accounts never allowed to be placed in the books.[5]

■ Under Specification of Error No. 24, Ormont claims error in the overruling of his objection to testimony of Samuel J. Phoebus, a deputy internal revenue collector, as to a conversation on May 18, 1945, between Ormont and Phoebus, relating to Ormont's 1944 income. Counsel for Ormont objected to the question on grounds that it called for incompetent, irrelevant and immaterial testimony, that a proper foundation had not been laid, that Ormont had not been warned that his statement might be used against him, and that a corpus delicti had not been established. There were three conversations between Ormont and internal revenue officers. The first, on the 18th of May, as to which evidence was admitted but later was stricken. The second, on the 23rd of May, which was excluded from evidence. The third on May 24th, which conversation was admitted into evidence. As to the third conversation it is conceded that a warning was given but its sufficiency is attacked by Specification of Error No. 25. Although the court had expressed doubt as to whether a corpus delicti had been laid as to Himmelfarb, the doubt had not been extended to Ormont's case and it is perfectly clear that it had been laid prior to the admission of testimony regarding the third conversation. However, we are expressing no opinion as to the necessity of its having been so laid. It is apparent that no error can be premised upon Specification of Error No. 24.

■ Specification of Error No. 25 concerns the testimony offered and admitted as to the third, or May 24th, conversation at which in addition to Ormont and

[5] Witness Link, in addition, testified that the Acme Meat Company had only one set of books, and that he had never declined to make any entries therein, that the invoices offered had been obtained by him from the office of the Company where they were being used as scratch paper, that he had handed them over to the government, that on several occasions Ormont had instructed him to make erroneous entries and to change calculations in order not to lose certain government subsidies, which Link did, that he had seen Ormont making sales for cash on the premises, that he had seen Himmelfarb computing amounts due from customers and a list kept by both accused of amounts due and outstanding from customers, that he had prepared Ormont's 1944 return, using figures taken from the books of the Company and figures given him by Ormont which Ormont claimed to be income from war bonds, and that Ormont had represented to him that such amounts represented all of his income.

Phoebus, Donald Bircher, a special internal revenue agent, was present. By way of foundation, Phoebus testified that Bircher cautioned Ormont as to the latter's rights. It is contended that Bircher's warning, concededly given, did not satisfy the law. Phoebus testified as to the warning given Ormont: "He was also told that he didn't have to answer any of the questions that he didn't want to, that he was not required to answer them, and in connection with another matter he was told that anything which he said might come out later in open court in some subsequent Government proceedings." Much is made of the questionable meaning of "another matter." Phoebus further testified that Bircher told Ormont: "All right, then, we will go on and ask you questions and if you don't want to answer any of them just don't answer it, just say so and we will go on to the next question." According to Phoebus, Bircher also asked Ormont if he desired to have an attorney present and that Ormont replied as follows: " * * * he didn't think he needed an attorney to tell the truth, that the thing had been bothering him, worrying him, and he wanted to get it off his mind so that he could go around and look people in the face again. And he repeated that he didn't think he needed an attorney to tell the truth." The court held the warning sufficient and we think no reversible error can be premised upon such ruling. If a warning was necessary, which we question, we think the trial court's holding was correct. Ormont became aware on May 18, 1945, that the Bureau was running an investigation of his 1944 return and had additional knowledge of that fact by the occurrences of May 23, 1945. Therefore, when, after being told that he need not answer questions put to him by the internal revenue officers and having disclaimed any desire to have an attorney present, he proceeded to make statements, such statements can only be regarded as admissions voluntarily given. Voluntary admissions, or indeed, voluntary confessions, may be received in evidence against the giver without proof of warnings.[6] The above serves also to dispose of Specification of Error No. 41, which concerns the testimony of Donald Bircher as to the same conversation.

■ Part of Specification of Error No. 25 concerns Ormont's contention that the government breached an express promise to keep in confidence whatever he said at the May 24th conversation. Bircher testified that Ormont "asked specifically whether any statements he made to us might become knowledge available to certain other Government agencies. And I told him that normally any information given the Internal Revenue Department would be held in confidence by that department, but that if a criminal trial should follow, such information might be disclosed at any such trial." The inference drawn from this testimony by Appellant Ormont is unjustified. Whatever the consequences might have been if the facts were that Ormont was assured his revelations would not be divulged to other government agencies, it is obvious that no such assurance was given.

■ Objections are entered to any and all testimony offered by the government witness, William S. Malin, an accountant employed by appellants' attorney, Mr. Mir-

---

[6] We quote with approval from United States v. Heitner, 2 Cir., 149 F.2d 105, 107: "Finally, as to the objection that, when the policeman asked what Cryne had in the building, he did not tell Cryne that the answer might be used against him, we need add nothing to what we said in United States v. Block, 2 Cir., 88 F.2d 618. However commendable it may be, even as a preface to such a casual inquiry as that here at bar, so to caution an accused, in the end the question is always whether the answer was 'voluntary.' This objection is really only a part of what is covered by United States v. Mitchell, supra, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140. The situation in Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 141 A.L.R. 1318 was altogether different." Also see Wilson v. United States, 162 U.S. 613, 623, 16 S.Ct. 895, 40 L.Ed. 1090; Powers v. United States, 223 U.S. 303, 313, 32 S.Ct. 281, 56 L.Ed. 448; Thompson v. United States, 7 Cir., 10 F.2d 781, 784; Gerard v. United States, 7 Cir., 61 F.2d 872, 874; United States v. Block, 2 Cir., 88 F.2d 618, 620; United States v. Klinger, 2 Cir., 136 F.2d 677, 678; Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, 31, certiorari denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428; Pulford v. United States, 6 Cir., 155 F.2d 944, 947.

man, who acted for Mr. Ormont and Mr. Himmelfarb jointly. It is claimed that such testimony is within the rule of privilege and inadmissible. Testimony concerned a list of bonds and other exhibits and the mailing thereof. It is argued that communications between a client and his attorney and the latter's agents include all persons acting as such, and are privileged, citing Wigmore on Evidence, Vol. 8, 3rd Ed., p. 584. The record is not clear as to the source of the information recorded by Malin in the various exhibits offered through him by the Government. He testified that Mirman contacted him by telephone on May 21, 1945, requesting an appointment to discuss income tax matters of Mirman's clients, Ormont and Himmelfarb, that he first met Ormont on May 21, 1945, at his office in the company of Mirman, that there was another meeting on May 22, 1945, at Mirman's house, at which both Ormont and Himmelfarb were present. Certainly, not all of the data was supplied Malin at those meetings. We consider it unnecessary to determine whether the factual basis for the preparation of the written exhibits had its source in information, books, or documents, given or showed to Malin by either or both of the accused, or disclosed at the above meetings, or given by Ormont or Himmelfarb to Mirman who, out of the presence of either or both of the accused, informed or showed them to Malin. Privileged communications are not recognized as between a client and his accountant. Of course, communications from a client to his attorney are generally privileged. Assuming that Malin was Mirman's agent (it appears that Mirman engaged Malin) and that disclosures were made at the meetings to Mirman and overheard by Malin, were such communications privileged? Where the presence of a third person is indispensable in order for the communication to be made to the attorney, the policy of the privilege will protect the client, that is, his presence is required in order to "secure the client's subjective freedom of consultation." 8 Wigmore on Evidence (3rd Ed.), § 2311, p. 602. Malin's presence was not indispensable in the sense that the presence of an attorney's secretary may be. It was a convenience which, unfortunately for the accused, served to remove the privileged character of whatever communications were made. Of course, communications made by the client to such a third party in the presence of the attorney are not within the privilege. On the other hand, if the data was obtained through voluntary and indirect disclosures by the attorney of matters received in confidence from his clients, admission in evidence of what was disclosed would violate the privilege as much as would the attorney's voluntary disclosures on the stand. However, granting that such voluntary extrajudicial disclosures by the attorney are generally inadmissible, we feel that special circumstances may show that the client impliedly authorized the attorney to make disclosures to the third person. See 8 Wigmore on Evidence (3rd Ed.), § 2325, p. 628. If such authority is found, the problem is no different than where the communication is made to the attorney in the presence of a third person who is not indispensably necessary to the communication. Here, Ormont and Himmelfarb were aware of Malin's employment and even participated in one or more meetings with Malin and Mirman relative to their income taxes. Some of the exhibits offered indeed were signed by the accused at Malin's request. It is reasonable to conclude that whatever disclosures were made by Mirman to Malin were authorized by the accused.

▆▆▆▆ Under Specification of Error No. 43, error is claimed in denying appellant's motion to strike all of the testimony of witness Bircher occurring after May 24 on the ground that appellant had been threatened with prosecution for destroying government property and thereafter acted under fear and submitted his books and records to the Internal Revenue Department with the understanding that all matters would be confidential and that they would permit him to adjust any deficiency. It is claimed that a confidence was breached without warning and without advising him of his deficiency or giving him an opportunity to make the adjustment. This motion referred to an affidavit made by Ormont in which he gave information to government agents and which he later forcibly recovered from them and destroyed. Appellant contends his entire conduct thereafter was

prompted and governed by fear, and that the testimony of Bircher to conversations and transactions after May 24 should be stricken. Ormont asserts that the taking of the affidavit was merely an attempt to straighten out the situation for he had acted under fear in having given the testimony, particularly concerning his possession and purchase of bonds. Mr. Ormont had been interviewed by Mr. Bircher and the latter wrote up an affidavit which Ormont discussed and fully agreed to. Ormont later asked to see the affidavit which he had signed in the office of the Intelligence Unit and Bircher handed it to him. Ormont took the affidavit and started to put it into his pocket. A physical tussle followed and Ormont disappeared with the affidavit, all of which occurred at the meat plant. Mr. Bircher told Ormont to think carefully as he was trying to destroy government property—that such a thing was serious. However, he continued to keep the affidavit and ran away with it. We are of the opinion that the court properly admitted testimony on the following days as there is no proof from this incident that Ormont acted under fear from threats of government agents. He was not threatened with prosecution, as contended, for destroying government property, but only that doing what he did was a serious thing and to think twice before he did it. It was properly concluded that what Ormont did thereafter was voluntary and any fear which he had was caused by his own action. There is no proof that a promise of confidence was made nor proof of any promise permitting adjustment of discrepancies.

██ It is argued under Specifications of Errors No. 48 and 49 that the court erred in denying appellant's motion for an acquittal on all counts of the indictment made at the close of plaintiff's evidence on the ground of insufficiency of the evidence. The motion was granted on counts 3 and 4 as to Ormont and count 1 as to Himmelfarb and the case went to the jury against Ormont on count 1 only and against Himmelfarb on count 2 only. The argument is made that arbitrary accounting methods were used, which the court accepted as to some counts but not as to count 1. The adjustment of the evidence as to the income from a fiscal year to the calendar year of 1944 was the only reasonable method open to the accountant. There was no way of ascertaining directly what portion of the income came from the joint venture, which was improperly accounted for on a fiscal year basis rather than on a calendar year basis. The $35,000.00 received from the joint venture ran from May 1, 1944 to April 30, 1945. Unless extraordinary circumstances indicated otherwise, and there are none shown, the larger part thereof accrued during the calendar year of 1944. It is argued that there is no evidence to support a case showing appellant had as income in 1944 substantially the amount alleged in the indictment, and therefore he should be acquitted. The evidence in this case is sufficient to support the verdict and as stated in Maxfield v. United States, 9 Cir., 152 F.2d 593, 597, supra, "Naturally, the prosecution was not required to prove the exact amounts of unreported income as alleged in the bill." We are satisfied from a consideration of the whole record, that the evidence sustains the charge.

██ Further, we are satisfied that the evidence of wilfulness was sufficient to go to the jury, and, this being a question of fact, it was properly submitted. See Maxfield v. United States, supra. The jury, in effect, concluded that the evidence of a greater income was present for the year 1944, and that the attempt at a joint venture filing on a fiscal year basis did not truthfully represent Ormont's business relations and that the part earned in 1944 should be included in his 1944 calendar year income. There is considerable evidence of income received by him over and above that reported—and, though there be some conflict in testimony, it is for the jury to draw the inferences and determine the facts.

### Residence of Each Defendant-Appellant

██ It is also contended that there is no evidence that defendant resided in the judicial district, Southern District of California, Central Division, or that he was obligated to file any tax return in that district or to pay taxes there or that any taxes were due in that district. The indictment states in part "That on or about the 15th of

March, 1945, in the Southern District of California and within the jurisdiction of this Court, etc. * * *". There is no showing by appellant that any challenge to jurisdiction in which the return should be made was ever suggested. Price v. United States, 5 Cir., 68 F.2d 133, is cited, in which the court stated that where accused claims that he was under no duty of making a return in the district in which the action was brought, the government has the burden to prove the jurisdiction. We have no such problem here. In Tinkoff v. United States, 7 Cir., 86 F.2d 868, 876, it is said that " * * * when he is charged with willful effort to defeat the tax by presenting a false return, no allegation of duty upon the part of appellant is necessary." Thus, appellant's contention is of no avail.

Under Specifications of Errors No. 50 and 51 it is charged that the court erred in denying appellant's motion made to strike all of the testimony given by witnesses Eustice and Link as to the years 1942 and 1943, because incompetent, irrelevant and immaterial, and prejudicial. The government urges that the evidence is relevant to show wilfulness in failing to report 1944 income.

Appellant argues that he was acquitted on counts 3 and 4 for income tax evasion for the years 1942 and 1943; that before evidence of commission of other crimes can be admitted there must be evidence which substantially established the other crimes with clear and convincing proof; that the acquittal in effect declared that these offenses were never committed and the defendant was not guilty of them. However, this evidence was not admitted to show that he committed another crime but merely to show his intent to act wilfully, his intention, and his state of mind. There is no reference in the briefs as to what evidence was or what was not prejudicial, and we do not take it to be our duty to seek through the record and speculate as to what portions thereof it is sought to have declared prejudicial.

In Tinkoff v. United States, 7 Cir., 86 F.2d 868, 879, supra, the following statement is made: "Appellant insists the court wrongfully admitted certain documentary evidence relating to a transaction of the same character in 1927. This evi-

dence included checks, contracts, and other documents bearing upon withdrawal of income by Newman for the year 1927 by appellant and Newman, one as principal and the other as his tax specialist. They were admissible for their bearing upon the question of motive and intent in the plan followed in 1928 as well as in prior years. Allis v. United States, 155 U.S. 117, 15 S. Ct. 36, 39 L.Ed. 91; Chadick v. United States, supra [5 Cir., 77 F.2d 961, certiorari denied 296 U.S. 609, 56 S.Ct. 126, 80 L.Ed. 432]; Emmich v. United States, supra [6 Cir., 298 F. 5, certiorari denied, 266 U.S. 608, 45 S.Ct. 93, 69 L.Ed. 465]; Wood v. United States, 16 Pet. 342, 10 L.Ed. 987. Furthermore, they were admissible because of their relationship to the occurrences with reference to 1928."

In Rose v. United States, 10 Cir., 128 F. 2d 622, 625, income tax returns for years not involved in income tax evasion prosecution were admitted, the court saying, "The only objection interposed to their admission was that they were incompetent, irrelevant, and immaterial. In overruling the objection, the court stated that they were admitted on the theory that they might be material as showing the continuance of the income and conduct. No further reference was made to such returns throughout the entire trial."

In Malone v. United States, 7 Cir., 94 F.2d 281, evidence of other years was admitted to show like conduct at or near the time of the instant violation, but not for showing evasion of income tax in those years. This was held to be proper where intent or motive was an element of the crime charged. The court in the instant case properly instructed the jury on this issue.

Appellant, under Specifications of Errors No. 14, 15 and 53, urges prejudicial misconduct of the district attorney in presenting the case against both defendants-appellants. It is contended that the misconduct consisted of repeated argument and statement to the jury which contained misstatements of the evidence, and that the cross-examination of witness Eustice was based entirely upon hypothetical questions and that there was nothing in the records to show the facts based thereon were true

Several other objections to the United States attorney's conduct are made claiming that he misled the jury on the evidence and misstated testimony to create prejudice against the defendant. The court ordered the jury to disregard certain of these statements and it is argued that even so, the damage had been accomplished by leaving an impression on the minds of the jury. It is also asserted that counsel's statement that all that has to be shown is a substantial amount of income not reported on the return, was prejudicial error because it has to be shown that the amount was substantially that which was alleged in the indictment and not merely a substantial amount of money.

We agree that the fact that the prosecutor holds a position of importance lends weight to his utterances and gives serious influence on the jury. The defense relies strongly on Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, which held that certain proscribed activities of the United States Attorney constituted prejudicial misconduct and called for a reversal of judgment. We have considered the actions of the United States Attorney herein and though in some instances they are subject to criticism, we do not find that they are such as to require reversal of the judgment. As to what amount has to be proved by the prosecution, we have already stated that the government does not have to prove the exact amounts alleged in the bill, and this is what the prosecutor had reference to when he said "But even if it is $11,000; let us take $11,000, which he admitted he earned in 1944. That's enough. We don't have to prove the precise figure. We just have to show a substantial amount." The real charge herein is an intent to evade and defeat the income tax law by filing a false return. The court fully protected appellant in its instruction to the jury.[7]

It is contended under Specification of Error No. 65 that the court erred in refusing to give the following instruction, requested by appellant, to the jury: "It is a recognized principle of our system of law that in order to convict a defendant, the facts proven must not only be consistent with the theory of guilt, but inconsistent with any reasonable theory of innocence, and this I charge is the law."

It is argued that in a case where circumstantial evidence is relied upon, it is error to refuse an instruction or to fail to give an instruction which gives a proper statement of the principle to justify a conviction; the facts or circumstances must not only be consistent with each other and with the conclusions sought to be established, but all the facts and circumstances must be inconsistent with any reasonable theory of innocence of the defendant, and there must be moral certainty that defendant committed the offense charged. Appellant cites California authority in his argument, but, again, we are in a federal court and a federal statute is alleged to have been violated. In a recent opinion by this court, McCoy v. United States, 9 Cir., 169 F.2d 776, certiorari denied 335 U. S. 898, 69 S.Ct. 298, a specific instruction on circumstantial evidence was held to be unnecessary, and where the court adequately instructs the jury defining the rights of the accused, he is fully protected. The instructions in appellant's case protected appellant in the same manner and degree as the instructions protected the appellant in the McCoy case.

The next specification of error set forth is No. 71, in which appellant complains that the court erred in stating to the jury as follows:

"The law under which these defendants were indicted in substance provides, as is applicable in this case, that any person who

7 "In this connection, it is not necessary for the Government to prove the precise amount which it charges was the true income of the defendant, nor is it necessary to prove the precise amount of tax which was due on that income. It is sufficient if the Government proves that in addition to the income which the defendant himself reported on his income tax return, the defendant Ormont' received as income substantially the sum alleged as taxable income during that year. In other words, the Government need not establish as to Count 1 that the precise sum of $36,982.52 was the correct net taxable income of the defendant Ormont for that year. Of course in this respect, as well as in all others, the Government's proof must convince you beyond a reasonable doubt."

wilfully attempts in any manner to evade or defeat any tax shall be guilty of a crime. The pertinent portion of the statute provides as follows:

" 'Any person required under this chapter to account for, and pay over any tax imposed by this chapter, who wilfully fails to truthfully account for any and pay over such tax, and any person who wilfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof,' shall be punished in the manner provided by law."

Error is claimed because there was no evidence that Ormont was a resident or required to report or pay any income tax within the jurisdiction of said court or that he was one of the class required to file a return or pay tax. Our comment hereinbefore made on the necessity of alleging residence covers the situation here presented.

 It is also contended that the court erred in telling the jury that any person who wilfully attempts "in any manner" to evade or defeat any tax etc., because the indictment alleged the manner in which he violated the statute, and in so doing, limited the case to the manner alleged, namely, (1) the filing of a false income and victory tax return, and (2) concealing from the Collector and other officers of the United States a true and correct gross and net income and the sources thereof. It is argued that the instruction, in effect, permitted the jury to go outside the indictment and find the defendant guilty on charges which were not set forth in the indictment but entirely different grounds. The appellant is not presenting the whole situation in his argument. The court first set forth the pertinent portion of the statute, under which appellant was indicted, which states "in any manner" but follows it with count one of the indictment as the charge against Ormont, and it is stated that the facts therein must be proved beyond a reasonable doubt, etc. There is no error in this instruction.

 It is contended under Specification No. 74 that the court erred in instructing the jury as follows: "In the event that you find that either defendant as to the particular count failed to report his true income in the amount substantially as claimed by the Government for the calendar year 1944, then as matter of law the tax for the calendar year 1944 would have been substantially more than paid by such defendant for the calendar year 1944." [Emphasis ours.]

It is argued that these instructions were misleading and erroneous for the following reasons: The court told the jury it need only find that the defendant failed to report his true income in the amount substantially as claimed by the government. The government counsel in his argument to the jury stated that all that was necessary for the government to prove was a substantial amount, and that said $11,000.00 was enough. However, in the indictment the government charged $24,000, which is the amount which must be proved. The instruction, therefore, was erroneous and should have used the word "alleged" rather than "claimed".

The court fully charged the jury as a whole and stated that the allegations of the indictment must be proven and that "It is sufficient if the Government proves that in addition to the income which the defendant himself reported on his income tax return, the defendant Ormont received as income substantially the sum alleged as taxable income during that year." The jury was sufficiently instructed and could not have been misled by the instruction complained of.

 Under Specification of Error No. 76, error is claimed because the court charged that "books and records" are required to be kept under the Internal Revenue Regulations, whereas the regulation says "books or records" must be kept for filing a return on a fiscal year basis. No exception was taken. It is further complained that the court erred in saying that if none were kept, the income, filed on a fiscal year return, must be reported in the year earned, because if a taxpayer is on a cash basis he is not required to report any income until received, even though earned in a given year. This latter statement is

944

corrected by subsequently saying in the instruction that he need not report any income if filing on a cash basis until cash is actually received. We do not agree that this instruction constitutes reversible error or that the jury was misled in light of the facts of this case and all the instructions given.

 Under Specification of Error No. 78, the appellant claims that the court erred in failing to instruct the jury on its own action that the jury might find appellant guilty of a lesser offense embraced within the charge in the indictment, namely, a misdemeanor under Section 145(a), Internal Revenue Code. Again, the entire source of authorities is California state court decisions and we do not find that the evidence warranted the giving of such other instructions where none were requested. The court was justified in not giving an instruction on the lesser offense from the facts herein.

 Prejudicial error is asserted under Specification No. 42 because a subpoena duces tecum was served on appellant in the court room in the presence of the jury requiring him to produce his books. We agree with the contention that it is error to request a defendant in a criminal case in the presence of a jury to testify or produce documents against his will, although he makes no objection thereto. However, we do not think there was prejudicial error in this case because of other circumstances. The real objection to such a proceeding is the prejudice created in the minds of the jurors in case there be a failure to produce the papers. The jury was present when discussion concerning lack of the books, that certain processes were available for obtaining them, and when a request for adjournment was made to permit time for securing the books and records. It was clearly improper for the marshal to serve the defendant in the court room in the presence of the jury; however, there is support for the court's conclusion that the defendant did not suffer prejudice thereby, the court stating that there is no showing that the jurors knew of the service and, too, that most likely they didn't; the court immediately quashed the subpoena. In light of these facts, we do not find that there was reversible error.[8]

[8] The appellant relies heavily upon McKnight v. United States, 6 Cir., 115 F.2d 972, 977, but that case is distinguishable on its facts. The demand for producing incriminating documents was made by counsel for the government under the direction of the trial judge and no direction was made to the jury to disregard the error. See Fitter v. United States, 2 Cir., 258 F. 567, 576, wherein it was stated that if it be doubtful whether the jury heard an alleged improper remark made by the prosecutor, who consented that it be stricken, and the court instructed them if they heard it to disregard it, the error was harmless. The court in the instant case told the jurors that defendant had a constitutional right that he may not be compelled to testify and his failure to testify may not create any presumption or inference of guilt and that the prosecution must prove guilt beyond a reasonable doubt and to a moral certainty. Further, that they must not consider any evidence not admitted by the court and that any lack of testimony by defendant will not be used against him.

In Bain v. United States, 6 Cir., 262 F. 664, 667, it is stated that the error might be sufficiently cured and that a consideration of all the circumstances shows that the defendant was not substantially prejudiced, for "the trial court did everything possible to neutralize the false step which had been made. * * * Every such case must depend upon its own circumstances as to whether the net result is reversible error; * * *."

See McDonough v. United States, 9 Cir., 299 F. 30, 42, in which the case of McKnight v. United States, 6 Cir., 115 F. 972, 976, is again distiguished: "The situation was, in fact, very different. In the trial court in that case a demand was made by counsel for the government, acting by direction of the trial judge, upon the defendant to produce an incriminating document. This was plainly error, but there was no order of the court directing the jury to disregard the error. Had there been such an order as there was in this case, the inference is that the Circuit Court of Appeals would have held that the error was cured." It was held that the incidental reference made to defendants in court was not prejudicial error, and further, the defendants subsequently took the stand and testified voluntarily.

In United States v. Rosenstein, 2 Cir., 34 F.2d 630, 634, the court states "The court instructed the jury to disregard

Appellant assigns other errors which are not argued, but claims reliance thereon as errors, particularly relying on motions for acquittal notwithstanding the verdict, and motion for a new trial which was refused. We have considered all further specifications of error not argued, but do not find grounds for reversal of the verdict and judgment.

### Specifically as to Himmelfarb

■ It will be remembered that Himmelfarb appealed from the judgment entered after the jury had returned a verdict of guilty against him as to Count II of the indictment.

Appellant Himmelfarb on March 14, 1945, filed with the Collector of Internal Revenue at Los Angeles, California, an income tax return for the calendar year 1944 showing his net taxable income for that year, computed on the community property basis, to be $4,111.74, and the tax due to be $656.00, which was paid. The joint venture return for "Miscellaneous Enterprises", heretofore referred to, was filed on May 24, 1945, for the fiscal year beginning May 1 and ending April 30, 1945, and disclosed appellant's interest to be $35,694.42 out of the $71,388.84, labeled "Misc. Income." Nothing else appeared on the return.

Himmelfarb was an employee of the Acme Meat Co. during the year 1944 up to May 1, after which and until at least April 30, 1945, he was a partner of Ormont in that enterprise. Ernest Link, bookkeeper for the company, testified that he saw appellant perform work at the Acme Meat Co. during 1944 and 1945, and saw him make out invoices to customers and compute the amount due from the customers. According to the witness, Himmelfarb would compute the weight of the meat sold and multiply it by three and enter the sum thus obtained on a list in a drawer at the plant. That he had seen these lists containing names of customers and amounts opposite the names, some of which were in appellant's handwriting and some in Ormont's handwriting; some were marked "paid" and crossed out, but he never actually saw money transferred. That he, as bookkeeper, was never given information of these transactions and therefore did not record on the company books any of the amounts appearing on such lists. That he audited the payroll checks and there were payroll checks made out to Himmelfarb; and that the profits received from the Acme Meat Co. for the year 1944 were credited to Ormont's accounts on the books and records of the company.

Mr. Eustice and Mr. Phoebus, agents for the Bureau of Internal Revenue, began investigations in November, 1945, to determine Himmelfarb's status with the Acme Meat Co., and whether he had paid the proper tax for the year 1944. On the basis of these investigations, Eustice determined that Himmelfarb had received additional unreported income for that year. He had possession of a photostatic copy of appellant's income tax return and with that he examined the books and records of the Acme Meat Co. at the plant and later made a transcript of certain accounts therefrom. The books were not available at the trial. Phoebus first met and spoke to appellant on May 18, 1945, in connection with the investigation. He testified that he told Himmelfarb on May 23, 1945, that they were contemplating an investigation of his income tax returns. The joint venture return was filed the following day, May 24, 1945. Eustice, in determining that appellant had additional income for the year 1944, used information secured from his individual income return for that year, the 1945 partnership

this request [to defendant to furnish a check as evidence against himself], stating that the appellant was not called upon to produce papers in his possession to be used against himself. This admonition was asked for by both counsel for the government and counsel for the appellant. These circumstances distinguish the case from McKnight v. United States, 6 Cir., 115 F. 972. If it was improper to ask for the production of checks, that error was cured by the caution given to the jury by the trial judge. * * * Moreover, it appears that, at the request of his own counsel, Marcus produced checks showing the purchase of merchandise, as well as the bills therefor." The authorities all rule that the action must be incriminating and prejudicial according to the circumstances and facts of the particular case. We do not find such prejudice in our facts as would cause reversal.

return, investigation of the books and records of the Acme Meat Co., and information from the statements of other government agents.

Testimony of David Gorgerty, a government witness and an insurance broker, was admitted to show that Himmelfarb had a fire insurance policy which had first been issued on April 3, 1944, to Himmelfarb, doing business as Phillip's Meat Co., and which he subsequently on May 20, 1944, had transferred to the Acme Meat Co., by indorsement. At approximately the same time, Himmelfarb told Gorgerty that he and Ormont were partners doing business as the Acme Meat Co. Exhibit 45 was admitted and consists of five monthly reports of values for the period May to October 1944, made out by Gorgerty, on which the beneficiary reports each month the amount of merchandise and stock on hand for the purpose of computing the premium for Exhibit 44, which is a copy of the original fire insurance policy. Some reports were signed in blank, and information therefor was received by telephone or obtained at the plant by Gorgerty from appellant. Some were signed only by Gorgerty; however, there is indication that he was so authorized. The copy of the policy had certain penciled notations, which were not on the original policy, as follows: "Sam Ormont" was added, and a line was drawn through "doing business as Phillip's Meat Co.," and "doing business as Acme Meat Co." written in by the underwriter to reflect the change.

William Malin, witness for the government and an accountant, was hired for appellants by Mr. Mirman, appellants' attorney, and he made out the return of Ormont and Himmelfarb, filed May 24, 1945. Information for the "Miscellaneous Enterprises" and "Miscellaneous Income" on the return was obtained from Mr. Mirman. Information for the method of division thereof on a fifty-fifty basis came from Himmelfarb as did also the information that the business was a joint venture. On July 31, 1945, Malin mailed certain letters and financial statements to Mr. Bircher, special agent for the Bureau of Internal Revenue and also enclosed certain factual data, obtained from Himmelfarb, disclosed by bank balances, books, records, and other sources of information furnished him. Bircher had been assigned to investigate the income of Ormont and Himmelfarb in May 1945 for the years 1942, 1943 and 1944, and testified that he first spoke to Himmelfarb on May 24, 1945, and told him what he was doing and produced his credentials.

Agents for the government, among other things, investigated Himmelfarb's bank records for 1944 and his net worth statement as of April 30, 1945, prepared by Malin, showing cash on hand, cash in banks, war bonds, and other assets in the sum of $42,-863.45, less liabilities of $375.94. The "Acme Meat Company Receivable" was shown therein as $3,308.45, followed by the explanation that "In addition to this, ½ of the profits for the year 1945 accrues. On April 30, 1945, this has been tentatively estimated at $9,561.06."

Testimony of Ralph Kibbee, an accountant, illustrated a method of recomputing appellant's 1944 and 1945 returns which would prove that appellant had paid all income tax owed by him and in fact over-paid. In so doing, he utilized a certain sum as an addition to the 1944 return, deducting it from the 1945 income, to-wit: $11,979.63, which represented 245/365 of appellant's share of the profits of the joint venture. That fraction represents the number of days of the joint venture falling within the calendar year 1944, 120/365 days falling within the calendar year 1945. The amount of the 1944 tax, as recomputed on the fractional share basis, is $5005.59 for 1944 and $2454.39 for 1945, resulting in a total for those years, as recomputed, of $7459.98. The difference between this total and the total tax for 1944 and 1945, shown by the returns filed for said years is $1431.99, which, with respect to the returns filed for those years, represents an overpayment. Kibbee also made a recomputation of the 1944 return by allocating $13,641.11 of the income from the joint venture, reported in the 1945 return, to the 1944 return. This amount, added to the 1944 return, produced an amount corresponding to the sum set forth in Count II as income for the year 1944. The total amount of the tax, as recomputed, due on the 1944 return, is $5,843.91. He also recomputed the 1945 return, subtracting the $13,641.11 allocated to 1944, and the amount

of the tax for 1945, as recomputed, is $1,881.85. The total amount of tax for the two years, shown by the returns filed, is $8,891.97. The total amount of tax for the two years, as recomputed, is $7,725.78. The difference is $1166.19, which amounts to an overpayment. The computations are all made on a community property basis. Kibbee was retained by Himmelfarb the day before he testified and he had not had any discussion with Himmelfarb, but based his computations on exhibits introduced into court and upon such assumptions as are indicated by him. He assumed that if certain sums were taken from the 1945 return and added to the 1944 return a different result would be obtained. Since the details were unknown the allocation had to be accomplished on the basis of proportioning the days.

Testimony of five witnesses was introduced by Himmelfarb to show his good reputation in the community, his truthfulness, honesty and integrity, and his reputation for payment of bills.

Himmelfarb stated that none of the $35,694.42, his share shown on the 1945 joint return, was reported by him on his individual income tax return for the year 1944; that it represented the total amount received; and that there were no expenses, nor were there any books kept in that regard.

The jury was carefully instructed on the nature and requirements of a fiscal return. They were first informed of the law: That it must be proven beyond a reasonable doubt and to a moral certainty, and that the violation must have been wilful. They were told that a fiscal return is merely an information return to disclose distribution of the income from the joint venture to the joint venturers or partners. The net income distributable must be reported by each one and paid by him on or before the 15th day of March of the calendar year following the calendar year in which such fiscal year ends. The fiscal year is any period not exceeding twelve months, other than the calendar year, and there the period set forth was May 1, 1944, to April 30, 1945, the return being filed on May 24, 1945. Relevant instructions given the jury are set out in the margin.[9]

9 " * * * In this connection, it is part of your functions to decide whether the defendants actually had some income-producing enterprise, or enterprises, from which they derived the sum of roughly $71,000, which they reported on that fiscal year basis in that return. In this connection, you must determine what enterprise, if any, the defendants engaged in besides the operation known as the Acme Meat Company, if you decide they were engaged together in the Acme Meat Company, and whether the $71,000 reported on that return was actually received by them as part of the transactions carried on as the Acme Meat Company, or whether the money was received as income with reference to some other transaction not part of the Acme Meat Company sales and operations.

"Ultimately you are to decide in this connection, among other things, whether the $71,000 odd dollars reported on the fiscal year return was or was not part of the income derived from the sales made as part of the operations of the Acme Meat Company, and whether that money, or a substantial part of that money, was in fact received by each of the defendants as part of his income from the Acme Meat Company operations; and if not, then whether or not books and records were kept of such other enterprise as required by the statute.

"The statute in that connection, Section 41 of the Internal Revenue Code [26 U.S. C.A. § 41], reads as follows:

" 'The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.'

"Books need not be formal.

"The Internal Revenue regulations, which have the force of law, provide that the type of books and records which must be kept in this connection to allow the filing of a return on a fiscal year basis, are books and records which contain entries which are sufficient to establish the.

Five questions are presented for argument by Himmelfarb in his brief:

First: "Is there substantial evidence against appellant to support the verdict of the jury and the judgment entered thereon?"

In our opinion there was considerable investigation of records of the company, personal records, conduct of the business and the books of the company was made by agents of the Bureau of Internal Revenue. They had available the individual and joint returns, financial statements, bank records and certain lists of personal assets. Results of the examination of this data and the testimony at the trial clearly support their finding that Himmelfarb received considerable income in 1944 over and above that reported by him on his individual return for that year. His claim that the $35,694.42 income reported by him on the Partnership return was from a separate venture on a fiscal year basis which therefore did not have to be reported on the 1944 return or any part thereof was presented to the jury with what proof there was; the jury, it must be presumed, rejected this thesis and found that a portion of that sum was received in 1944 and should have been reported in that year on a calendar year basis, and that there was no true joint venture of "Miscellaneous Enterprises" kept on a fiscal year basis whereby income could have been properly reported on a fiscal year return. Evidence of Himmelfarb's conduct and other circumstances present sufficiently support the findings by the jury of a wilful intent to evade and defeat a large part of his income tax due and owing for the calendar year 1944 by filing a false and fraudulent return. The understatement was first established, and they thereupon properly drew from the facts that it was wilfully done, for which there is support in the evidence.

The second question raised by Himmelfarb is: "Did the trial court err in denying appellant's motions for an acquittal of the offense charged against him in Count II of the indictment made at the close of the government's case, and the motion for such acquittal at the close of all the evidence?"

It is argued that there is not sufficient or substantial evidence of facts which exclude every other hypothesis than guilt, and that therefore it was the duty of the trial judge to acquit defendant; that where all the evidence is as consistent with innocence as it is with guilt, as herein, this court must reverse the judgment against the accused; that therefore the lower court erred in not granting the motion for an acquittal.

As already shown, the facts and evidence supported the action of the court below; the denial of the motions was proper.

The third question presented is: "Did the trial court err in admitting in evidence, over appellant's objection: (a) Exhibit 34; (b) Exhibit 35; (c) Exhibit 36A; (d) Exhibit 50A; and (e) Exhibit 50B; and in denying appellant's motion to strike from the record (a) Exhibit 32; (b) Exhibit 34; (c) Exhibit 35; and (d) Exhibit 36A?"

It is contended that exhibits 32, 34, 35 and 36A pertain to a period beyond the year 1944, the year involved in the offense charged, and therefore are not within the issues; that they were in no way connected with this case, no foundation was laid for them, they cover periods prior and subsequent to the period involved herein, and no showing was made that they related to appellant's 1944 income or income tax and thus the court erred in admitting them over objection.

Exhibit 32 was the signature card of appellant for the commercial account maintained by him; exhibit 34 was the applica-

amount of gross income and the deductions, credits and other matters required to be shown in returns, and that such books and records shall be kept at all times available for inspection by Internal Revenue officers and shall be retained so long as the contents may become material in the administration of any internal revenue law.

"If no books or records of the type required by law are kept, a fiscal year re-

turn cannot be filed, but the sums earned must be reported upon the calendar year return for the year in which they were earned.

"The defendants in this case are charged with alleged violations of subparagraph (b) of Section 145 of the Internal Revenue Code; and said section does not make it a crime for the defendant taxpayer to conceal or fail to disclose the source or sources of income."

tion of Ruth Himmelfarb, wife of appellant, dated January 20, 1945, for a cashier's check to Acme Meat Co. in the amount of $3150.00. Exhibit 35 was the cashier's check, dated January 20, 1945, payable to Acme Meat Co. in the amount of $3150.00, issued pursuant to said application. Exhibit 36A was comprised of a number of ledger sheets of the commercial bank account for the period December 23, 1943, to March 22, 1945. Authorities are cited to the effect that evidence which has no bearing on the matters in issue should be excluded and that where irrelevant evidence prejudicial to the accused is admitted a judgment will be reversed, and, further, where bank records are admitted without any evidence connecting the same with the offense charged it is error if prejudice is caused thereby.

Exhibit 44 is the insurance policy and exhibit 45 constitutes the monthly reports made in connection with the policy. It is claimed that no foundation was laid, that the testimony of Mr. Gorgerty, who identified the exhibits, failed to establish that the policy was a true copy of the original and that this was not otherwise established; further, that there was no reason for introducing these exhibits except to prejudice Himmelfarb.

Exhibits 50A and 50B are the statements of Himmelfarb's net worth as of April 30, 1945, they being identical except that the first is unsigned, whereas the latter is signed, by Himmelfarb. It is contended that no foundation was laid therefor, that they are within the rule respecting privileged communications, that no corpus delicti has been established, and that said exhibits were not within the issues of the case and were subsequent in point of time to the offense charged against Himmelfarb; also that there was no tie-up made with the offense and that the mere possession of assets is not indicative of evasion of income taxes or that its acquisition was the result of evasion of income taxes, citing Gleckman v. United States, 8 Cir., 80 F.2d 394, 399. Further, that speculation and conjecture are not permitted to fasten guilt. It is further asserted that prejudice was augmented and aggravated by argument of the government counsel to the jury.

The bank records, over objection of Himmelfarb, were admitted to show income for the year 1944 and, along with other evidence in the case, constituted a part in the chain of circumstances proving guilt. Even if it were assumed to be error, it was harmless error and is not shown to have prejudiced the appellant. Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509, relied upon by appellant, holds that the admission of bank records without any evidence connecting the same with the offense charged is reversible error where accused may have been prejudiced thereby. The government's argument before the jury claims that the records show how much money came into appellant's account. In considering the evidence, it is doubtful whether the government properly connected this evidence with the offense charged; however, in the circumstances we do not find reversible error. Eustice, who examined the account, stated that he did not actually use it in the computation of the taxpayer's income as corrected, but only for informational purposes. See Gleckman v. United States, 80 F.2d at page 399, supra, wherein it is said that "On the other hand, if it be shown that a man has a business or calling of a lucrative nature and is constantly, day by day and month by month, receiving moneys and depositing them to his account and checking against them for his own uses, there is most potent testimony that he has income, and, if the amount exceeds exemptions and deductions, that the income is taxable."

As to the insurance policy and reports which were admitted into evidence we find no impropriety, for the evidence surrounding its introduction tended to show appellant's status with the Acme Meat Co. The evidence further shows that Himmelfarb acted somewhat irregularly in transferring the policy from himself to Sam Ormont and himself, doing business as Acme Meat Co., which bears upon his general conduct in business and sheds light on the element of intention.

The introduction of the net worth statements over objection was not reversible error. They were prepared by his accountant and sent to the government

agents, showing his net worth as of April 30, 1945. It is argued that no connection with 1944 income was shown, at least, it was never established that the amounts therein reflected income for the year 1944 in excess of that reported. Further, it was not thereby shown that income tax was not paid on such sums or that its acquisition was the result of evasion of income taxes. However, the trial court did not hold that the mere possession of assets was the basis for the verdict herein. Again, it is merely a part of the evidence which goes to show Himmelfarb's income in the general period involved, and therefore was relevant.

■ We are of the opinion that net worth statements are pertinent in establishing an accumulation of income by Himmelfarb. The case is quite clear that Himmelfarb had a large source of income in 1944 and that his general conduct suggests and proves evasion of taxes thereon in the proper period. We do not think any of the exhibits objected to created prejudice such as would amount to reversible error when we view the entire record and note the proof and circumstances establishing guilt. As stated earlier in the opinion, there is no privilege protecting appellants from any disclosures by their accountants.

■ The fourth question presented concerns the conduct of counsel for the government: "Was counsel for the government guilty of misconduct: (a) In making repeated references in his opening and closing argument to the jury of other alleged crimes and offenses purportedly committed by appellant, of which there was no evidence against appellant, and by repeatedly stating to the jury that the sources of the income upon which appellant allegedly attempted to evade income taxes were overcharges, side payments and extra payments unlawfully collected and received in connection with the sale of meat, notwithstanding the fact that there was no evidence against appellant showing that such income or any income received by him was received from overcharges, side payments, or extra payments received in connection with the sale of meat, or any other unlawful transactions; and (b) In stating to the jury that witnesses not called by appellant were accessible and available to him, and stating or inferring that if appellant was innocent such witnesses would have been called by him, and that the reason such witnesses were not called was that the testimony of such witnesses would be adverse to appellant."

It is not feasible nor necessary to set forth the statements complained of by appellant. We have read the argument in its entirety and find nothing which would constitute reversible error. In light of the circumstances of this case the statements are such as might reasonably be expected. The argument is based upon the evidence in the case and that which may be reasonably inferred therefrom. See Malone v. United States, 7 Cir., 94 F.2d 281, supra, wherein it was held that counsel may adopt inferences from the evidence in presenting his argument to the jury. Quoting from that case, 94 F.2d at page 288, it is said: " * * * the argument, taken as a whole, though vigorous and forcible, is as fair to the defendant as might reasonably be expected under the circumstances. Counsel have a right to make any argument based upon evidence proven in the case, or which may be reasonably inferred therefrom, * * *." We do not think government counsel went beyond this right, and there is evidence to support his argument and the inferences drawn by him. Considerable objection is made to the lack of separation of the evidence in reference to both defendants and that government counsel improperly applied evidence which was referable only to Ormont against Himmelfarb. The two were tried together and the two ran a business together, and for the most part acted jointly throughout so that most of the evidence in conduct of that business would be properly related to both defendants. The trial court properly limited the admission of evidence sought to be introduced by the government, and we do not find any error in the government's supporting argument. Himmelfarb made no objection throughout the argument nor did he request the court to admonish the jury to disregard any part of the argument as improper. It is only where an error is seriously prejudicial that it will be noticed in the absence of objection. See Skuy v. United States, 8

Cir., 261 F. 316. Here, there was no error, let alone a prejudicial error. The jury was not misled or confused as to the basic elements in this case. The facts were disclosed by the 1944 returns together with the partnership return on a fiscal year basis filed May 24, 1945, and by the documents consisting of letters, net worth statements and affidavits. The evidence substantially supports the conclusion that the income for 1944 was greater than reported and that the unreported sums were net income. No records existed as to the income stated on the partnership return, as it grew out of vague and unrecorded cumulative totals, the profits being distributed irregularly. The report of such funds as coming from a joint venture followed after knowledge of an investigation of 1944 income of both appellants. There is considerable more evidence indicating the general conduct and intention of Himmelfarb and the acceptance of overcharges which were not recorded in the regular books of the business. From the case as a whole we cannot find prejudice in the argument before the jury. The other alleged crimes complained of were properly admitted to prove intent and wilfulness in the evasion of income tax. The jury was carefully instructed on the limitations of such evidence, and appellant was fully protected. See McCoy v. United States, 9 Cir., 169 F.2d 776, certiorari denied 335 U.S. 898, 69 S.Ct. 298, supra.

It is objected that the government counsel improperly called attention to the fact that certain witnesses were available but were not called upon to testify and improperly commented upon why they were not placed on the stand in support of the defense. The witnesses were Mr. Moody and Mr. Malin; both, it was argued, were accessible to act as witnesses for Himmelfarb. We do not think that counsel for government should have used this failure to produce certain witnesses or to have drawn it to the jurys attention, for he was in no way bound to produce them. In the closing argument for Himmelfarb, counsel refers to both of these witnesses and mentions the limited extent of Malin's testimony and refers to Moody's signature on the return for Himmelfarb, and states that it merely "establishes it is someone other than defendant Himmelfarb who prepared that return." This preceded the government's mention of the two men which in a way constituted an attempt to answer the inferences drawn by the other counsel. Again, in view of this fact, the evidence in the case, and the lack of objection, we do not find reversible error. The fifth question proposed by appellant: "Did the trial court err in refusing to charge the jury as requested by appellant in his proposed instructions to the jury: (a) No. 17; (b) No. 22; (c) No. 25; (d) No. 27; (e) No. 29; (f) No. 30; and (g) No. 35?"

It is unnecessary to set forth all of the requested instructions; suffice it to say that we have carefully considered the instructions as a whole and find that they fully cover the applicable law and that the jury was adequately advised of Himmelfarb's rights and of the law applicable thereto in light of the evidence in the case. It was not error to refuse the specific instructions requested. The evidence did not warrant the emphasis on a request to instruct on mistake of fact and/or ignorance of the truth or falsity of the matter set forth. The jury was fully instructed on requirements of proof, the element of wilfulness and the statute charged to have been violated.

The final question raised by appellant is: "Did the trial court err in denying appellant's motions for an acquittal notwithstanding the verdict of the jury, and in the alternative, for a new trial?"

Consideration of the facts and law in this case shows that the verdict of guilt was supported by the evidence and that the trial court properly refused to grant an acquittal notwithstanding the verdict or a new trial.

The judgments against both Ormont and Himmelfarb are affirmed.